EDWARD C. MORAN, Admr.,

*vs.*

ROCKLAND, THOMASTON & CAMDEN STREET RAILWAY.

Knox.    Opinion June 22, 1904.

*Negligence.    Master and Servant,* Rules for employees in dangerous occupations.
When not liable to volunteers.    *Railroads.    Fellow-Servants.*

It is the duty of persons and corporations engaged in a dangerous and com-
plex business to adopt, promulgate and enforce such rules and regulations,
for the conduct of its business and the government of its employees in and
about the discharge of their duties, as will afford reasonable protection to
its servants and agents in the discharge of those duties.

The master is not bound to make or promulgate rules as to how his servants
shall conduct themselves outside the scope of their employment, or as to
how business shall be carried on or any act done which is not carried on or
done by his knowledge and permission or consent either express or implied.

When acting without his employer's authority and beyond the scope of his
employment, the servant is as much a stranger to his master as is a third
person, for whose act the master is not responsible, and for whose govern-
ment and guidance he is under no obligation to make rules and regulations.

*Held;* that the injury which resulted in the death of the plaintiff's intestate
was caused by the negligence of the defendant's servant, while acting as a
mere volunteer outside the scope of his employment, contrary to the rules
and without the authority of the defendant.

Exceptions by plaintiff.    Overruled.

Action on the case for alleged negligence on the part of the defend-
ant corporation, causing injuries to Raymond E. Moran while in its
service, and from which injuries he subsequently died.

The plaintiff claimed that the accident was due to the failure of the
defendant corporation to make and enforce suitable rules and regula-
tions, for the protection of those in its employ, regarding the running
of the cars over its tracks.    He averred that the defendant negli-
gently and carelessly permitted its servants employed in the con-
struction and repair of its machinery, apparatus, poles and wires to
run cars at will over its track without ordinary direction and control.

The defendant offered no evidence, and at the close of the plain-

tiff's evidence, the presiding justice instructed the jury to return a verdict for the defendant. The plaintiff took exceptions to this ruling.

*D. N. Mortland and E. K. Gould,* for plaintiff.

It is those risks alone which cannot be avoided by the master that the servant assumes. *City of Lasalle* v. *Kostka,* 190 Ill. 135; *Pantzar* v. *Tilly Foster Iron Mining Co.,* 73 N. Y. 376; *Frye* v. *Bath, Gas & Electric Co.,* 94 Maine, 17; *Noyes* v. *Smith,* 28 Vt. 64; *Whittaker* v. *Del. & Hudson Canal Co.,* 126 N. Y. 544.

Duty to establish and enforce definite regulations for the protection of employees. 3 Wood on Railroads, 2nd ed. 382; 14 Am. & Eng. Enc. of Law, 1st ed. 907; Am. & Eng. R. R. Cases, 497; Wood on Railroads, Minor's ed. 1757; *Abel* v. *Del. & Hudson Canal Co.,* 128 N. Y. 664.

Whether the rules are adequate for the safety of others and the management of trains is a question of fact for the jury. *Chicago, B. & Q. R. R. Co.* v. *McLallen, Admr.,* 84 Ill. 109. It is the duty of a railroad corporation operating a railroad, not only to adopt and promulgate rules, but after doing so to exercise such a supervision over its servants in the prosecution of its business as to have reason to believe that it is being conducted in pursuance of such rules. *Wabash R. R. Co.* v. *McDaniels,* 107 U. S. 454; *Laning* v. *N. Y. Central R. R.* 49 N. Y. 521, 10 Am. Rep. 417; *Dowd* v. *N. Y. Ontario & Western Ry.* 107 N. Y. 459.

Other facts should have been left to the jury. *Lasky* v. *Canadian Pacific Railway Co.,* 83 Maine, 461; *Nugent* v. *B. C. & M. R. R.* 80 Maine, 62; Sherman on Negligence, 19; Cooley on Torts, 669; Thompson on Torts, 38; 2 Wood on Railroads, 2nd. ed. 1433; *Gaynor* v. *Old Colony & Newport R. R. Co.,* 100 Mass. 212; *Mayo* v. *Boston & Maine R. R.,* 104 Mass. 143; *Hankinson* v. *Lynn Gas & Electric Co.,* 175 Mass. 271; *Olsen* v. *Andrews,* 168 Mass. 261.

Plaintiff's intestate not a fellow-servant. *Shanny* v. *Androscoggin Mills,* 66 Maine, 420; *Smith* v. *Erie R. R. Co.,* 67 N. J. 636.

Statute 1893, c. 268, § 17, applies to cases of this kind, as well to employees as other persons, because the statute makes no exceptions.

*Orville D. Baker and Arthur S. Littlefield,* for defendant.

Condon, in setting the construction car in motion over the defend-ant's road, was wholly outside his contract of service, and his acts no longer bind the defendant. *Lima Railway Co.* v. *Little,* (1902), 67 Ohio St. 91, 13 Am. Neg. Reports, 431; *Demers* v. *Deering,* 93 Maine, at page 280.

The injury to the plaintiff's intestate was brought about not by lack of rules, but by neglect or disobedience of rules on the part of Condon. These rules are three in number: (1) Forbidding any car to be taken out by any department without express order or per-mission from Mr. Chisholm. (2) Related especially to the particular stretch of single track on which Condon placed his construction-car, and on which the accident happened. (3) If any car about to follow another car in the same direction, it was the duty of the conductor of the following car to notify the conductor of the car ahead, that he was about to follow; and then it was the duty of the conductor of the leading car to notify in turn the conductor of the car approaching in the opposite direction, as soon as he might pass that car at any turn-out; the approaching car, being thus notified that another car was to follow behind the one just crossed, was under the duty to wait upon that turn-out till the following car also had safely passed.

Counsel also cited: *Fluhrer* v. *Lake Shore Ry.,* 124 Mich. 482, 484; *O'Donnell* v. *Alleghany Valley Railroad Co.,* 59 Pa. St. 239; *Pa.,* etc., *Railroad Co.* v. *Langdon,* 92 Pa. St. 21; *Waterbury* v. *N. Y. Central Railroad Co.,* 17 Fed. Rep. 671; *Galveston H. & S. A. Ry. Co.* v. *Slinkard,* 2 Am. Neg. Rep. 654, 44 S. W. Rep. 35.

SITTING: WHITEHOUSE, STROUT, SAVAGE, POWERS, SPEAR, JJ.

POWERS, J. Action on the case for negligence. The plaintiff excepts to the ruling of the presiding justice directing a verdict for the defendant.

Moran, the plaintiff's intestate, was an employee of the defendant at the time of the injury. He was employed as a motorman and was just being taught his duties. At the time of the accident he was tak-ing charge as a motorman of a passenger car running from Camden towards Rockland, another and experienced motorman being also upon the platform with him to oversee and instruct him in his new duties.

The accident was in the daytime and occurred by reason of a motor construction-car with a tower car attached being taken out of the upper car-barn, placed upon the main track, and run in the opposite direction to the intestate's car by one Condon assisted by one Ripley. Condon and Ripley were employed as linemen by the defendant. The duties of a lineman were to make such repairs as were called for and directed upon the over-head work of the system, that is, its poles and wires. On the day of the accident, Condon assisted by Ripley ran the motor car out of the upper car-barn and down a spur track to a junction with the main line, and then started it towards Camden, upon the main line which at that point consisted of a single track situated between two turn-outs, one turn-out at the lower car-barn and power-house, a few hundred feet towards Rockland from the junction with the spur track; the other turn-out, Oakland Siding, being some distance away towards Camden on the farther side of a hill which rose between the junction and Oakland Siding. Owing to this hill and a heavy fog which prevailed at the time, the two cars did not discover each other until too late to avoid collision. In the collision the plaintiff was injured and subsequently died of the injuries received. The situation may be better understood perhaps from the following rough sketch:

1 Car Barn Siding
2 Lower Car Barn
3 Power House
4 Signal Light
5 Upper Car Barn
6 Place of Collision
7 Signal Light
8 Oakland Siding

The plaintiff claims that the accident was due to the failure of the defendant corporation to make and enforce suitable rules and regulations, for the protection of those in its employ, regarding the running of the cars over its tracks. He avers that the defendant negligently and carelessly permitted its servants employed in the construction and repair of its machinery, apparatus, poles and wires to run cars at will over its track without ordinary direction and control.

Undoubtedly it is the duty of persons and corporations engaged in a dangerous and complex business to adopt, promulgate and enforce such rules and regulations, for the conduct of its business and the government of its employees in and about the discharge of their duties, as will afford reasonable protection to its servants and agents in the discharge of those duties. A failure to do so is negligence, and for an injury resulting from such failure the employer is liable. It is not necessary that such rules shall be printed. They may be simply oral; but whether oral or printed it is the duty of the employer to so promulgate them as to afford the employees a reasonable opportunity of ascertaining their terms. Knowledge of the rule however is sufficient. If the servant has such knowledge, it matters not how the rule was promulgated or the knowledge obtained. Moreover, the master in making rules is only held to the exercise of ordinary care. He is not bound to anticipate and guard against accidents which cannot be foreseen by the use of ordinary prudence. He is not called upon to make or promulgate rules as to how his servants shall conduct themselves outside of the scope of their employment, or as to how business shall be carried on or any act done which is not carried on or done by his knowledge and permission or consent either express or implied. It is for the conduct of his business and the government of his employees in and about the discharge of the duties of their employment that he is bound to make rules and regulations. When acting without his employer's authority and beyond the scope of his own employment the servant is as much a stranger to his master as is a third person, in regard to whose conduct as he has no power so he is under no obligation to make rules.

Applying these principles to the present case we find that the defendant had printed rules, the adequacy and sufficiency of which

are not questioned, for running passenger cars, but it had only oral regulations for the running of its construction-cars. Before any question can arise as to the sufficiency of such rules or the manner of their promulgation it is incumbent upon the plaintiff to prove, as he has alleged, that the act of Condon in taking out. the motor construction-car and running it over the line on the day of the accident was done by the authority, permission and consent of the defendant.

It was not within the scope of his employment. He was a lineman or helper to the linemen. His duties were as stated by himself "repairing wire and trolley and one thing and another" to keep the line fixed up and in running order. He had nothing to do with the running of cars. The movement of cars upon the entire system was under the control of Mr. Chisholm the defendant's assistant superintendent, from whom also the linemen at this time took their orders as to their work. When it was necessary to transport the tower car from place to place in the repair work of the linemen, it was done by attaching it to a regular passenger car, which did not and could not interfere with the running of the other cars. If for any reason this was impractical or inconvenient, the motor car might be used, but only by the special direction of Mr. Chisholm. There is no evidence in the case that the linemen had any authority to take out the motor car upon their own judgment and inject it at will into the transportation system of the defendant. The only other time Condon ever took the motor car out upon the line, he obtained permission from Mr. Chisholm and followed his specific directions. Libby, who was with him and whose employment covered a similar period of time, never had taken the motor car out himself and stated that he had no authority so to do, and had nothing to do with that branch of the business. Without stating the testimony further it is sufficient to say, that a most careful examination of it fails to show any authority on the part of Condon or any other lineman, resulting from their employment, to run the motor car over the defendant's track except by special order from Mr. Chisholm.

It is not claimed that any such order was expressly given on the day of the accident, but it is contended that authority may be implied from the attendant circumstances. The accident occurred on Monday

afternoon.   On the Saturday previous while Condon and Libby were out with the tower car attached to a regular passenger car, Mr. Chisholm told Condon to go and fix some wires up to the Highlands. He did not have time to do it Saturday and on Monday afternoon without any further conversation or notice to Mr. Chisholm, took the motor out upon the main line and was proceeding on his way to make these repairs when the collision took place.   It is self-evident that notice to Chisholm of the movements of all cars was necessary to the safety of the defendant's passengers and servants.   The instruction given by Chisholm on Saturday to Condon, who was then out making repairs with the tower car alone attached to a regular passenger car, can afford no basis for any inference of authority for Condon at some future time to run the motor car over the line without any notice to Chisholm who had charge of the running of all the cars upon the road.   No such authority could have been intended to be conferred by Chisholm and none such could have been understood to have been received by Condon, who says that he supposed Chisholm had charge of letting out cars and directing whether any cars should be put upon the line outside of the regular passenger cars.

Condon at the time of the accident was acting outside the scope of his employment without the express or implied authority of the defendant, a mere volunteer for whose act it was not responsible and for whose government while so acting it was under no obligation to make rules or regulations.   It may be observed, however, that the entire evidence conclusively shows that the accident was not due to any failure on the part of the defendant to adopt and promulgate suitable rules, but to the failure of Condon and Libby to observe and practice the rules, either as to giving notice to the preceding passenger car that the motor was about to follow it, or as to turning on or observing the signal lights which protected this section of the defendant's track, both of which rules they perfectly knew and understood and the observance of either one of which would have prevented the collision.

*Exceptions overruled.*