SOMMERS *v.* STANDARD MINING CO.

1. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF RISK.
  Where a coal mine operator employed a driver to move cars of coal from the galleries of the mine to the shaftroom, and authorized no other person to perform that duty, a cager working in the shaftroom assumes the risk of injury resulting from the act of a miner or other intermeddler in starting a car down an incline leading into the shaftroom.

2. SAME—WARNING TO SERVANT—UNAPPREHENDED DANGER
  The danger not being one which the master was bound to apprehend, his failure to warn the servant cannot be said to have caused the injury.

Error to Saginaw; Gage, J. Submitted June 19, 1906. (Docket No. 79.) Decided October 1, 1906.

Case by Paul Sommers against the Standard Mining Company for personal injuries. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

The testimony produced by plaintiff tended to prove that he was employed by the defendant to work in its coal mine in the capacity of cager in January, 1904. He was not a miner, and never before worked in a mine. His duties were to place cars of coal upon the elevator which was operated in the shaft of the mine so that they might be hoisted to the surface. From the shaftroom galleries ran, in which were laid trams, and from which, except from the west entry or gallery, in the usual course of the business, a driver, using a mule, brought and left at the foot of the elevator loaded cars of coal, removing and distributing empty cars. The elevator or cage was operated from two sides, and there were two cagers employed. The west entry or gallery inclined for 25 or 30

feet to a crest some $2\frac{1}{2}$ feet higher than the bottom of the shaft, and beyond this crest was a depression, in which depression, if a single loaded car was left, it could not run down into the shaft. Usually, several cars together were brought in by the driver and left at the crest with a wheel of the first car spragged or fastened to prevent revolution. The driver would then drive the mule down into and across the shaft, thus notifying the cager there were cars for the elevator in the entry. The cager would go to the top of the incline, sprag the second car, move the first car down to and upon the elevator, and so bring them all down and send them to the surface. The west gallery was undulating for some distance beyond this crest, and it was possible for a loaded car, let go farther back in the gallery, to run to and over the crest and down into the shaftroom by force of gravity alone. Plaintiff had never explored or been into the west entry beyond the crest and the depression beyond it, did not know that cars coming from beyond this point might run down into the shaft, did not know that any one but the driver ever handled or moved cars in the entry or that danger from such a source and of the nature described existed. About March 1st, a miner had, for a period of two days, placed loaded cars in the gallery. It does not appear that knowledge of the fact came to defendant. In taking cars from this entry, the cager put his back to the car, walking in front of it, and eased it down the incline to the foot of the elevator. Then, going behind the car, he pushed it upon the elevator; he never ran a car down without having it spragged. About 10 o'clock on the morning of March 31, 1904, plaintiff had brought down the last car left by the driver at the top of the incline, had removed the sprag, and was waiting for the descent of the elevator, when a loaded car ran down this incline. He was caught between it and the car he was moving, and severely injured. Where, that is from what room in which coal was being mined, this car came from, how it came to be upon the track, by whom it was set in motion,

does not appear. It does not appear that a car had ever so run down before. It may be inferred that a miner, having filled the car, started it. There was no appliance provided which would, or was intended to, interrupt the progress of a car so running down the gallery. No one but the driver rightfully moved, or caused to be moved, any car in the gallery. It was his duty, and it was not the duty or proper employment of any other person. The plaintiff contends that the risk from this source and cause was not one which he assumed, and that the duty of the defendant to furnish him a reasonably safe place in which to work was violated. His theory is perhaps best shown by the amendment made at the trial to his declaration and here set out at length:

"The west entry which leads to the south shaftroom and which has the incline aforesaid is undulating throughout its entire length and when cars loaded with coal are once set in motion from the rooms in this entry they will run down of their own accord over the incline and into the south shaftroom, which renders it especially dangerous to the cager employed in this room unless reasonable caution is taken by the defendant to guard against such dangers, and it became and was the duty of this defendant to use reasonable care in and about the management of said mining operation, and in and about the conducting of its loaded cars over the track of said west entry in order to furnish the cager at work in the south shaftroom a reasonably safe place in which to work. But notwithstanding said duty said defendant took no precaution to protect this plaintiff in his place at work in that this defendant did not provide a proper system for conducting the operations in said mine and not providing suitable rules and regulations governing its employés in and about the management and moving of its loaded cars on and over the track of the west entry leading to the south shaftroom and in that it did not suitably instruct its employés in and about the movement of cars loaded with coal over the track of said west entry, and for the further reason that it did not provide any appliances whereby the cars loaded with coal, and unattended passing over the track of said west entry could be stopped and prevented from passing over the incline of said west entry adjacent to the

south shaftroom and injuring the cager there at work. On the contrary, it did permit the miners employed in the rooms along the west entry aforesaid to shove out loaded cars upon the track of said entry and there leave them unattended and unblocked, or spragged. And this defendant provided no rules or regulations, and gave no instructions which prevented the employés in and about this west entry from moving the loaded cars on and over the track of said entry in any manner which seemed to them to be suitable, and by reason of this careless and negligent conduct on the part of said defendant a car was permitted to run over the track of the west entry, loaded with soft coal, and containing about 1,500 lbs. thereof, on the 31st day of March, 1904, which said car was unattended and was allowed to run of its own motion by some of the employés of said defendant over the track of said west entry, and enter the south shaftroom and ran on to the iron plate where this plaintiff was at work moving a car upon the cage, and pinned this defendant between the two cars in the manner heretofore set forth, and causing the injury and damage set forth in the first and second counts."

Defendant offered no testimony. The trial judge directed a verdict for defendant.

*W. F. Denfeld,* for appellant.

*Humphrey, Grant & Smith,* for appellee.

OSTRANDER, J. (*after stating the facts*). There is no testimony tending to prove the fact alleged in the amendment to the declaration in manner following—" it did permit the miners employed in the rooms along the west entry aforesaid to shove out loaded cars upon the track of said entry and there leave them unattended and unblocked, or spragged." There is no testimony tending to prove that defendant had knowledge that any one except the driver ever assumed to move a car to or upon the track in this gallery. It was a risk of the employment that an intermeddler, or a miner, would do what he had no right or authority to do. In a sense, the shaft, and employment therein, was made dangerous, unsafe, by this risk. It is admitted by counsel for appellant that his client assumed

all the risk attendant upon the driver leaving cars unblocked at the top of the incline. Was it to be reasonably apprehended that cars other than those moved by the driver would come out of this gallery? None had ever so come out. The regular course of defendant's business involved no such thing. Rather it insured against it. It is not apparent how any set of rules upon the subject would operate more effectively than did the division of labor proven, the assignment of the duty of moving cars to the driver alone. *Moran* v. *Railway*, 99 Me. 127; *Rutledge* v. *Railway Co.*, 123 Mo. 121. See, also, *Deye* v. *Tool Co.*, 70 C. C. A. 64–66. Nor can it be said that failure to inform plaintiff of a not to be apprehended danger was the cause of his injury. The verdict was properly directed.

The judgment is affirmed.

CARPENTER, C. J., and McALVAY, GRANT, and MONTGOMERY, JJ., concurred.