JAMES POWERS *vs.* WYMAN AND GORDON COMPANY.

Worcester.    September 28, 1908. — October 20, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.

The proprietor of a factory or machine shop owes no duty to a laborer employed to work there to change or improve any of the obvious conditions of his workshop or machinery. The laborer accepts them as they are at the time of his employment. If a laborer employed in a workshop, where there is a steam trip hammer which is set in motion by pressing down a pedal extending in front of and around two sides of the base, on the second day of his employment, being ignorant of the existence of the pedal, is told by a person, who may be acting as a superintendent, to go with a loaded wheelbarrow between the trip hammer and a pile of dies two or three feet high, where there is a space " just wide enough to

wiggle the barrow through," and if in attempting to do this the laborer strikes the pile of dies and is thrown down, and in some way his foot comes down on the pedal and sets the machine in motion and the hammer comes down and cuts off one of his fingers, he cannot recover from his employer for this injury, which happened by a pure mischance for which no one was liable and which could not reasonably have been anticipated either by the employer or his superintendent, who therefore were guilty of no negligence in failing to warn or instruct the laborer in regard to such a danger.

MORTON, J. This is an action of tort to recover for personal injuries received by the plaintiff while employed as a laborer in the defendant's works at Worcester. The declaration is in four counts: the first, for failure to give the plaintiff sufficient instructions; the second, for a defect in the ways, works and machinery which was not discovered because of the negligence of the defendant, or of that of some person entrusted by it with the duty of seeing that the ways, works and machinery were in proper condition; the third, for the negligence of a superintendent; and the fourth for failure on the part of the defendant to furnish suitable machinery and appliances for the proper prosecution of his work by the plaintiff, and to keep the same in repair. At the close of the evidence the judge on the defendant's motion ordered a verdict for the defendant, and the case is here on the plaintiff's exceptions to that ruling. At the argument in this court the fourth count was waived.

The plaintiff applied for work at the office of the defendant, and after some conversation with the master mechanic, who had authority to hire help, was taken by him to the superintendent with directions to the latter to set the plaintiff at work. The superintendent took him to a man who is spoken of in the exceptions as the "tall Swede," and told him to set the plaintiff at work, and told the plaintiff to do as the Swede told him to do. The Swede directed him "to go with a Polander and carry crank shafts from the large furnace to the trip hammer." The trip hammer was a steam hammer operated by means of a pedal extending in front of and round two sides of the base. When the operator desired to start the machine he pressed down on the pedal. This would let the steam on and set the hammer in motion, and it would continue in motion as long as the pedal was kept pressed down. The crank shafts were placed by the Polander under the hammer, and when hammered sufficiently were

removed by him and the plaintiff and taken by them to the blacksmith, where they would leave them and then proceed to the furnace and get another crank shaft and repeat the previous operation. The plaintiff was hired about one o'clock and did this work for the rest of the day. Across the passageway at one side of the trip hammer was a pile of dies seven or eight feet long and two or three feet high. The next day the plaintiff went to work about seven o'clock, and the Swede set him to doing something which took about ten minutes. The Swede then told him to get a wheelbarrow and go over to a pile of crank shafts across from the blacksmith's table where the Polander was at work, and do as the Polander told him. He went over and the Polander told him to put three crank shafts on his wheelbarrow and take them to the machine shop. There were two ways to the machine shop, and when the plaintiff had got his wheelbarrow loaded he saw that one of the ways, and perhaps the more direct one, was blocked by a coal team. He asked the Polander if he should wait, and the Polander said, "No, go down there," pointing to the other way which went between the trip hammer and the pile of dies. "The space," as the plaintiff testified, "between the machine and the pile of dies was just wide enough to wiggle the barrow through," and from his account on his direct and cross examination of the way in which the accident happened it appears that while "wiggling through" he struck the pile of dies and was thrown down and in some way his foot came down on the pedal and set the machine in motion and the hammer came down and cut off one of his fingers.

It is obvious, we think, from this statement of the facts that the accident was one for which the defendant was in no way liable. The conditions as to the machine and the way along which the plaintiff was told to go were the same at the time of the accident that they were when he entered the defendant's employment, and the defendant owed him no duty to change them. The plaintiff testified that he had not seen the pedal, and did not know how it worked, or that the machine was operated by a pedal. Considering that he had worked about the machine for half a day, and was twenty-six years old, and, so far as appears, of average intelligence, this seems incredible.

But assuming, as we are bound to do, that a jury might believe him, it does not affect the defendant's liability. For aught that appears the way, although narrow, was safe enough, except for such an accident as happened, and neither the defendant nor its superintendent nor the Polander (assuming that the latter was for the moment a sort of superintendent) had any reason to anticipate such an accident as occurred, and were, therefore, not guilty of any negligence in failing to warn or instruct the plaintiff. What happened was a pure mischance for which no one was liable. *Craven* v. *Mayers*, 165 Mass. 271. *McLean* v. *Cole*, 175 Mass. 5.

*Exceptions overruled.*

*E. J. Melanefy*, for the plaintiff.
*C. C. Milton*, for the defendant.