MONTEVILLA, Appellant, vs. NORTHERN FURNITURE COMPANY, Respondent.

*April 8—April 29, 1913.*

*Master and servant: Injury from wood-working machine: Knives securely guarded: Duty of master to warn servant of dangers.*

1. The knives in a machine used to trim and plane the edges of boards are *held* to have been securely guarded, under sec. 1636*j*, Stats., by a metal hood between the knives and the operator, which automatically dropped down upon the boards and adjusted itself to them in such a manner as to leave only space enough for the knives to engage and trim the edges of the boards as they passed through the machine, and which, when no boards were inserted, came three eighths of an inch below the cutting edges of the knives.
2. A master's duty to warn a servant is fulfilled when the servant is warned as to all risks or hazards that are incident to the employment when carried on in the manner in which the servant is instructed to do the work or in which an ordinarily prudent person may reasonably anticipate it may be done by the servant.
3. No duty devolves upon the master to warn a servant of dangers which are as obvious to the servant as to the master.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Plaintiff brought this action to recover damages for a personal injury. He is a Lithuanian by birth and a laborer by

occupation. He had very little knowledge of English, but could read and write in his native language. The defendant owned and operated a manufacturing plant in the city of Sheboygan, which was equipped with power-driven machinery, and employed a large number of persons. May 14, 1912, plaintiff applied for and was given employment by defendant at its plant and was directed to remove certain trimmed boards turned out from one of its machines. The following day he was set to work at a machine and was told, as he testified, to feed it. The wood-working machine he was given to operate is known as a double-joiner, was driven by belt power, and was used to trim and plane the upper and lower edges of boards that were passed through it. The whole machine was about fifteen feet long. It consisted of a steel table about four feet above the floor, in the center of which, above and below, were shafts or heads unto which were fastened knives that trimmed at the same time the bottom and top edges of boards that went through the machine. The method by which the work was performed was by placing a number of boards, clamped together in an upright position, on a sliding table or carriage, about eighteen inches wide, which, when the operator pulled a lever, carried the boards forward under the planing knives to be planed, and then the boards were removed by an employee called the off-bearer at the rear of the machine. After the boards were removed the operator, also by means of a lever, reversed and returned the empty carriage for reloading. The length of the cutting edges of the knives in the upper head or shaft was eight inches. Between the operator and the upper shaft, and hung on a hinge immediately in front thereof, was a hood, or solid piece of iron or steel, about nine inches wide and one and a half inches thick, which concealed in back of it the upper knives in the head or shaft, and moved upward about a half an inch when it was raised by the boards on the sliding carriage as they were passing through the knives to be planed. This hood was three eighths

of an inch lower than the lowest point of the blades of the upper knives, and every part of the knives, except the cutting edges at the bottom where the upper parts of the boards entered to be edged, was completely covered.

On the day of the injury the plaintiff had placed about eight boards on the carriage and by means of the lever conveyed the same into the machine to be planed. After the boards were planed, but before all but three of them were removed at the rear of the machine, he started back the carriage, which, with the remaining boards, became stuck in the machine and failed to return. The short ends of the boards were about eleven or twelve inches from the knives, on the forward side of the machine, pointing toward the operator, and the long ends remained on the rear end of the machine, where the off-bearer stood. Failing to move the carriage with the boards on it either way by means of the lever, plaintiff placed his hands on the ends of the boards toward him and shoved them forward, and in doing so his right hand slid under the knives and was injured.

The grounds of negligence charged in the complaint were: (a) failure to furnish the plaintiff with a reasonably safe place to work; (b) failure to furnish plaintiff with a reasonably safe appliance; (c) failure to warn and instruct the plaintiff as to the dangers incident to the operation of the machine; (d) failure to have the part of the machine which caused the injury securely guarded or fenced; (e) failure to furnish the plaintiff with competent fellow-servants; (f) failure to have some competent person in charge of the work in said plant whose duty it was to see that employees had reasonably safe places to work and reasonably safe appliances to work with; and (g) failure to promulgate rules and regulations for the conduct of the business.

The answer denied, generally, these several allegations of negligence set forth in the complaint, and also pleaded in defense the contributory negligence of the plaintiff. At the

close of the evidence the trial court, on motion of defendant, granted an order of nonsuit on the ground of contributory negligence, and from a judgment entered thereon the plaintiff appealed.

For the appellant there was a brief by *Rubin & Zabel,* attorneys, and *W. B. Rubin* and *Horace B. Walmsley,* of counsel, and oral argument by *Mr. Walmsley.*

For the respondent there was a brief by *Burr J. Scott,* attorney, and *Lawrence A. Olwell,* of counsel, and oral argument by *Mr. Scott.*

VINJE, J.    The trial court held that plaintiff was guilty of contributory negligence as a matter of law in attempting to push the boards back under the knives in the manner he did. The case of *Gardner v. Paine L. Co.* 123 Wis. 338, 101 N. W. 700, strongly supports such ruling.    But since the case fails to establish any negligence on the part of the defendant, it is not necessary to decide the question of plaintiff's contributory negligence.    Conceding that the knives should be guarded as provided in sec. 1636*j,* Stats., the undisputed testimony is that they were securely guarded by a metal hood that automatically dropped down upon the boards and adjusted itself to their different heights in such a manner that it left only space enough for the knives to engage and trim the edges of the boards as they went through the machine, and when no boards were inserted it came about three eighths of an inch below the cutting edges of the knives.    It is obvious that a sufficient opening to admit the boards and to allow the knives to engage them enough to be trimmed must be left unguarded or else the machine became useless.    It was through this space that necessarily had to be left unguarded that plaintiff's hand came in contact with the knives.    Every other part of the machine was securely guarded.    So there was no failure to guard under sec. 1636*j.*

But it is claimed that defendant should have warned plaint-

iff of the danger of getting his hand into the machine. There are two answers to this contention. In the first place, in the ordinary and usual operation of the machine, there was no occasion whatever for plaintiff putting his hand near the knives. The boards were clamped into the movable carriage, a lever was then turned, and they were carried through under the knives without any guidance or assistance on the part of the plaintiff or operator of the machine. When the boards were trimmed they were taken away by the employee behind the machine, the lever was then reversed, and the empty carriage returned ready for the insertion of more boards and a repetition of the operation. There was no need of the operator placing his hands on the boards at all after they were clamped into the carriage. And there is no evidence to show that such a clogging had ever occurred before. It was occasioned by plaintiff reversing the lever before all the boards were taken away. He says if he had looked he could have seen that they had not been removed. The master, therefore, could not anticipate that such clogging might result and that plaintiff might be tempted to put his hands on the boards to push them through, because such a situation had never before arisen. The master is bound to warn only against dangers which an ordinarily prudent man may reasonably anticipate may occur, in the ordinary course of the servant's employment, and then only when the servant may reasonably be presumed to be ignorant thereof. He is not bound to warn against the unexpected, nor against dangers which may attend an unusual or freakish manner of doing the work. No one can anticipate all the contingencies that may arise in an unusual performance of a duty. Where it is a master's duty to warn a servant, such duty is fulfilled when the servant is warned as to all risks or hazards that are incident to the employment carried on in the manner in which the servant is instructed to do the work, or in which an ordinarily prudent

person may reasonably anticipate it may be done by the servant. There is no duty upon the master to warn against every possible danger to which the servant may be subjected in the course of his employment. *Dahlke v. Ill. S. Co.* 100 Wis. 431, 76 N. W. 362; *Powalske v. Cream City B. Co.* 110 Wis. 461, 86 N. W. 153; *Kroger v. Cumberland F. P. Co.* 145 Wis. 433, 130 N. W. 513. Here the danger sprang out of a particular fact, or combination of circumstances, which the master could not reasonably anticipate would occur, and hence no duty to warn against it arose. *Girard v. Griswold,* 177 Mass. 57, 58 N. E. 179; *Powers v. Wyman & G. Co.* 199 Mass. 591, 85 N. E. 845; *Sommers v. Standard M. Co.* 146 Mich. 111, 109 N. W. 30; *Ahern v. Amoskeag Mfg. Co.* 75 N. H. 99, 71 Atl. 213, 21 L. R. A. N. s. 89 and note.

In the second place, there was no duty to warn because the danger of injury from getting one's hand into the machine was as obvious to the plaintiff as to the defendant. It is true plaintiff testified that he did not know there were knives under the hood; that he thought there were some kind of rollers that took the shavings off from the boards as they passed through. But it is immaterial whether he thought rollers or knives took off the shavings. It was obvious from the work done by the machine that serious injury to his hand would follow from its coming in contact with the part thereof that trimmed the boards. Plaintiff was twenty-nine years old, had been in this country eleven years, and had worked at various employments, including one year in a glove factory. No grown person, whatever his schooling or lack of schooling, could fail to appreciate that a machine that would trim the edges of boards as those were trimmed would seriously injure one's fingers if they got into it. Machines speak a universal language. And the operating parts of this one spelled danger to fingers coming in contact therewith just as plainly in the Lithuanian tongue as they did in English. It was equally

obvious to him as it was to the defendant that his hands might slip from the ends of the boards if he pushed against them. For these reasons it must be held that no duty devolved upon the defendant to warn the plaintiff.

There was no evidence to sustain any other charges of negligence.

*By the Court.*—Judgment affirmed.