OLSON, Appellant, vs. WHITNEY BROS. COMPANY, Respondent.

*December 12, 1914—May 4, 1915.*

*Master and servant: "Safety" of working place or appliance: Duty of employer: Statute construed: Burden of proof: Evidence: Sufficiency.*

1. Under sec. 2394—48, Stats. 1911, providing that every employer shall furnish a safe place of employment, and sub. (11), sec. 2394—41, defining the word "safe" to mean "such freedom from danger to the life, health or safety of employees . . . as the nature of the employment will reasonably permit," the duty imposed upon the employer is absolute, in the sense that if the place of employment fails to come up to the statutory requirement he cannot, in the absence of other defenses, escape liability for consequent injuries to an employee by showing that he exercised ordinary care or even extraordinary care to make it safe.

2. But safety is a relative, not an absolute, term; and places of employment and appliances are safe, within the meaning of the statute, when they are so constructed and in such condition that, considering the nature of the employment conducted in them and the manner in which it is customarily carried on, or the manner in which an ordinarily careful or prudent man may reasonably anticipate it might be conducted, and considering the use the appliances are, with the knowledge of the employer, being put to, or the use which an ordinarily careful and prudent person may reasonably anticipate they might be put to, they are as free from danger as such employment and such use will reasonably permit.

3. In an action under the statute for injury to an employee, the burden rests upon the plaintiff to establish that defendant failed

to comply with the statute and that such failure was the proximate cause of the injury.

4. In an action for injury to the foreman of a pile-driver crew caused by the breaking of a chain used in moving the pile-driver sideways on rollers over newly made ground, the evidence is *held* to sustain a finding by the jury that the chain was of sufficient strength to render the operation of moving the pile-driver in the usual and customary manner of moving it as free from danger to the safety of the employees, including plaintiff, as the nature of the work of moving it reasonably permitted.

BARNES and SIEBECKER, JJ., dissent.

APPEAL from a judgment of the circuit court for Douglas county: G. N. RISJORD, Judge. *Affirmed.*

Action for personal injury. On November 18, 1912, the plaintiff, who was the foreman of a pile-driver crew, was injured while they were moving the pile-driver sideways over sand that had previously been pumped in and on which a coal dock was being constructed. It was intended to move the pile-driver about 100 feet to drive certain piles that had been left, and it had been moved about thirty-five feet when plaintiff was injured.

The pile-driver was moved on three long timbers or skids about eight inches thick, fourteen inches wide, and from twenty-eight to thirty-two feet long, laid at right angles to the rollers, which were set under the bed of the pile-driver in a frame of 12 x 12-inch timbers with a half oval cut for the rollers to turn in. The rollers were twelve inches in diameter and were so placed that the pile-driver was moved sideways. Two of the long timbers or skids were placed about five feet apart under the leads and hammer of the pile-driver and the other about fourteen feet away near the other end under the engine. The whole weight of the pile-driver was testified to be thirteen tons by defendant's witness and as much as thirty-five tons by plaintiff. As the ends of the long timbers or skids were reached a new set were put in place so that the ends overlapped twelve inches or more, and they should

be placed level with the skids on which the rollers rested. Usually the skids were so placed that the end of only one would be reached at a time. A chain about twenty feet long of five-eighths iron was fastened to the bed timbers of the pile-driver on each side so that it formed a loop. A double block was fastened to this chain by means of a harp-shaped bridge link, whose position on the chain could be shifted. A cable ran through this block and through another block, which was fastened to a pile some distance from the pile-driver, and from there to the nigger on the engine of the pile-driver. The pile-driver was moved by power being applied to this cable by means of the nigger. Greater or less power could be applied to the chain at either end of the pile-driver by shifting the bridge link upon the chain.

At the time in question a new set of skids had just been placed. There was a conflict in the evidence as to whether they were level with the skids on which the pile-driver rested. The anchor block was fastened to a pile about forty-nine feet from the pile-driver. This pile was on a line with the leads. One end of the pile-driver was a little in advance of the other, and the bridge link had been set to pull this end up level with the other. It was set about twelve feet from the center of the chain. Plaintiff stood about ten feet from the leads of the pile-driver, and as the power was applied the chain broke and the bridge link block swung and struck plaintiff.

The jury found (1) that the chain that broke and injured plaintiff was of sufficient strength, at the time of the injury, to render the operation of moving the pile-driver in the usual and customary manner of moving it as free from danger to the safety of the employees engaged in moving the driver, including the plaintiff, as the nature of the work of moving it reasonably permitted; (2) that plaintiff was not guilty of any want of ordinary care that contributed proximately to produce his injury; and (3) damages in the sum of $2,365.

Judgment for defendant dismissing the action was entered upon the verdict and the plaintiff appealed.

*Victor Linley,* for the appellant.

*W. P. Crawford,* for the respondent.

The following opinions were filed February 9, 1915:

VINJE, J. Plaintiff's counsel makes the broad claim that since the statute, sec. 2394—1, Stats. 1911, as applied to this case, abolished the defense of assumption of risk and the negligence of fellow-servants, and since by sec. 2394—48 it required the master to furnish a safe place of employment, the only defense open to the defendant was that of contributory negligence; that it is an insurer of the safety of the place and appliances furnished and cannot escape liability by showing that they are safe within the meaning of the statute. To sustain this claim the cases of *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 321, 139 N. W. 179; *Kosidowski v. Milwaukee,* 152 Wis. 223, 139 N. W. 187; and *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650, are cited. The first two cases were decided under sec. 1636—81, Stats. 1911, which was repealed by ch. 588, Laws of 1913. It prohibited an employer in certain kinds of labor from furnishing scaffolding, hoists, stays, ladders, or other mechanical contrivances that were "unsafe, unsuitable or improper." The statute did not define the words "unsafe, unsuitable or improper," and the court applied to them their usual meaning and held that if an unsafe appliance of the kind mentioned was furnished and an accident to an employee resulted while engaged in the labor specified in the statute, the employer was liable unless he could show assumption of risk or contributory negligence or both. It mattered not that he might himself be free from negligence. In that sense he was an absolute insurer of the safety of the appliance.

The statute applicable to this case is quite different in its language. It says the employer shall furnish a safe place of

employment, but it defines the word "safe" to mean "such freedom from danger to the life, health or safety of employees or frequenters as the nature of the employment will reasonably permit." Sub. (11), sec. 2394—41. Here the duty is measured by such safety as the nature of the employment will reasonably permit. Under sec. 1636—81 the prohibition against an unsafe appliance was absolute. Our present statute recognizes the "rule of reason" and does not impose upon an employer an impossibility or an unreasonable burden. Under either law if the employer has failed to meet the statutory requirement, if there be no other defense, he is absolutely liable. But if he has met the statutory requirement; if his place of employment is safe within the statutory definition, then he cannot be held liable on account of its condition though it may not be safe in the original technical sense of the term. The duty imposed upon the employer by the statute is absolute in the sense that if his employment or place of employment fails to come up to the statutory requirement, in the absence of other defenses he cannot escape liability by showing that he exercised ordinary or even extraordinary care to make it safe. The exercise of care on his part becomes immaterial as a defense *per se.* The only pertinent inquiry is: Was his place of employment safe within the meaning of the statute? If it was not, then the amount of care he may have exercised to make it so becomes immaterial. This rule was announced in *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650. There can be no liability, absolute or otherwise, until a violation of the statute is shown. It follows from this that an injury may result from a place of employment that is not safe in the technical sense and yet the employer may not be liable because his place of employment may have conformed to the statutory requirement. It may have been as free from danger as the place of employment would reasonably permit and yet have been far from actually safe, because there are many

places of employment that are dangerous notwithstanding they have been made as free from danger as the nature of the employment will reasonably permit.

In the present case the jury found that the chain that broke and injured plaintiff was of sufficient strength at the time of the injury to render the operation of moving the pile-driver in the usual and customary manner of moving it as free from danger to the safety of the employees moving it, including plaintiff, as the nature of the work of moving it reasonably permitted. It is urged that this is not a finding in accordance with the statute because it tests the sufficiency of the chain by the strength required to move the pile-driver in the usual and customary manner. It is claimed that it should have been as strong as it could reasonably have been made, so that no matter in what manner the pile-driver was moved it would have held the strain. This raises the question whether the statute was intended to require a place of employment or an appliance to be made as free from danger as the nature of the employment will reasonably permit irrespective of the kind of employment to be carried on within it or the probable use to which the appliance may be put; or whether it means that, having regard to the nature of the employment and the probable use to which an appliance may be put, the place of employment and the appliance shall be so constructed and in such condition that they shall be as free from danger as the nature of the employment will reasonably permit. It seems the latter must have been the legislative intent. Throughout both the Workmen's Compensation and Industrial Commission Acts there is a studied attempt to safeguard the health, life, and limb of employees to the utmost in so far as the same can be done without placing unnecessary or unreasonable burdens upon the employer. The legislation was a laudable and quite successful attempt to better industrial conditions for both employer and employee. Upon both were placed additional duties of care to the end

that the employees might suffer less by way of injuries and the employer less by the way of damages for injuries. But there was no intent to place upon either an impossible or unreasonable burden. To hold that it was the legislative intent that an appliance should be made as strong as it reasonably could be made irrespective of the use for which it was intended, would be to convict the legislature of placing upon employer and employee alike an unreasonable burden. Giant-like tools and appliances far in excess of the usual margin of safety would have to be furnished and used, because they could reasonably be so made. Under such construction of the statute it would be no excuse to say that, for the purpose intended and as customarily used, appliances of far less weight and size would be amply adequate and safe. It would prevent the use of tools and appliances fit for the work and substitute for them unreasonably heavy and cumbersome ones which themselves might cause accidents by reason of their weight and size.

Places of employment and appliances are safe within the meaning of the statute when they are so constructed and in such condition that, considering the nature of the employment conducted in them and the manner in which it is customarily carried on, or the manner in which an ordinarily careful and prudent man may reasonably anticipate it might be conducted, and considering the use the appliances are, with the knowledge of the employer, being put to, or the use which an ordinarily careful and prudent person may reasonably anticipate they might be put to, they are as free from danger as such employment and such use will reasonably permit. *Montevilla v. Northern F. Co.* 153 Wis. 292, 141 N. W. 279; *Kendzewski v. Wausau S. F. Co.* 156 Wis. 452, 146 N. W. 516. In other words, safety is not an absolute, fixed term, but a relative one, being always measured by the kind of employment and the manner in which it is customarily carried on and by the use appliances are, with the knowledge of the

employer, being put to, or which an ordinarily prudent person might reasonably anticipate they may be put to. Therefore if a place of employment or an appliance is as free from danger as the nature of the employment will reasonably permit when used in a customary or usual manner for the work intended, or in such a manner as an ordinarily prudent and careful person might reasonably, anticipate it might be carried on or used for, it is safe, though it may not be safe for a condition or a manner of carrying on the work that could not reasonably be anticipated by the employer. The statute places no heavier duty upon him than to make the place of employment for *his* work as free from danger as the nature of it will reasonably permit. By his work is meant the kind of employment he is engaged in and the customary manner in which it is conducted, or the manner in which an ordinarily prudent person might anticipate it may be done. It follows, therefore, that the question submitted answered the statutory call.

It is strongly urged that the jury's answer to it is not supported by the record, since plaintiff's evidence shows that the skids under the rollers were placed level and no unusual or unreasonable strain was put upon the chain that broke. There is, however, an abundance of testimony on behalf of the defendant given by co-employees of the plaintiff that the skids were not placed level with the ones on which the rollers were; that plaintiff saw this and yet he signaled to the engineer to put on more and more power; that the latter did so till every part of the appliance groaned and creaked, as the witnesses put it, and the chain broke before the rollers climbed the ends of the skids. Plaintiff testified that it was customary to place the skids, and that they ought to be placed, level with the ones supporting the rollers, but not end to end. Instead they were placed so as to overlap some with those in position but parallel and level with them. To place them level it was often necessary to dig away some soil,

owing to the fact that those in position were more or less pressed into the ground by the weight of the pile-driver. The softer the ground the more they would be pressed in. There is evidence to show that the skids put in projected some two and one-half inches above the ones in position upon which the pile-driver rested. That would be quite a climb for rollers twelve inches in diameter carrying a load of from thirteen to thirty-five tons. Plaintiff was in full control of the crew and it was his duty to direct how the work should be done.

One witness testifies:

"Olson gave orders to put on the strain again after the bridge link was moved. He gave orders to put the strain on—gave orders that way (indicating with hand), and the man kept tending to the nigger and the engineer turned on a little more steam and the ropes began to squeak and everything pulled tight; strained, and he was motioning for more power and the driver moved a little—I don't know how many inches, but not far until it struck solid and this kept on turning and finally the chain broke. The rollers were up against the end of the new skids. . . . The engine was pulling on the driver with the roller against the skid before the chain broke, probably a minute. . . . The ropes all squeaked and everything creaked from the stretch being pulled out of them. . . . I saw what was going on. I saw Olson wave his hand when it would not climb that timber. I saw the man at the winch pull tighter on the rope. I saw the engineer putting on steam. I could see all that, that is what that means (indicating with hands). I could see it, I was within fifteen feet of the driver. . . . I noticed afterwards the cable where it was around the pile and it cut into the pile, around the head of the pile. It dug three quarters of an inch, it couldn't be got out without the aid of a peavey. The most of it was done this time. The rope had been around the pile for moving the driver down, and it never goes in far enough but what a man can take hold and lift it, but this time it was snared up tight. . . . They pulled hard enough to make a hole in the pile. It was three quarters deep. Two half hitches and had to pry it off with a peavey to get the thing off."

There was other testimony to the same effect. Upon the evidence the jury was warranted in finding that had the pile-driver been moved in the customary manner and in the way in which it could be reasonably anticipated the work would be conducted, the chain was safe.

A broken link was received in evidence and it is before us. According to plaintiff's evidence it is the link that broke. Defendant's evidence denies that it is. In view of the apparent defective condition of the link and the jury's answer, we must assume that they found that it was not the link that broke.

It is further urged by plaintiff that it was error to instruct the jury that the burden of showing that the defendant did not furnish a sufficient chain to do the work was upon the plaintiff, and that the burden was upon him to show that such failure to furnish a sufficient chain was the proximate cause of his injury. Both contentions are founded upon the erroneous assumption that in an action under the statute, when it is shown that an accident has occurred, the plaintiff is entitled to recover unless the defendant can establish the defense of contributory negligence. Not so. The burden rests upon the plaintiff to establish that defendant has failed to comply with the statute and that such failure is the proximate cause of his injury. Instead of, as formerly, showing that defendant failed to exercise ordinary care, plaintiff must now show defendant has failed to meet the statutory requirements as to safety. In both actions it is incumbent upon plaintiff to establish that defendant's failure was the proximate cause of the injury. No other assignment of error is of sufficient importance to merit treatment.

*By the Court.*—Judgment affirmed.

BARNES, J. (*dissenting*). The chain in use was offered in evidence and sent to this court as an exhibit. What was claimed to be the broken link was also sent, although there is some dispute in the evidence about its identity. Whether

the right link was sent or some other is not very material. A part of the chain appeared to be comparatively new and little worn. Another portion of it appeared to be old and worn. Whether it was old or not there is no disputing the fact that it was very badly worn and showed the effect of much use under a heavy strain. Some of the links were so embedded into each other that appearances would indicate that their diameters at the point of contact had been reduced so that they were not more than half what they originally had been. It is safe to assume that the chain gave way at its weakest point.

There was no room for the jury or for any one else to say that the nature of this work was such that it would not reasonably permit the use of a heavier chain or of one that was not badly worn or one that would have stood the test to which the broken chain was subjected. Neither was there room for reaching a conclusion that the breaking of the chain was not the proximate cause of the plaintiff's injury. I think no member of the court would disagree with any statement so far made.

The court takes the position that if the chain was in such condition that it would not break if the work was carried on in the customary manner or in the manner in which an ordinarily prudent man might reasonably anticipate that it would be carried on, then it was as safe an appliance as the nature of the employment would reasonably permit within the meaning of the statute. If this be the correct interpretation of the statute, then I concede that there was some evidence to support the verdict and that the judgment should be affirmed.

I cannot and do not agree to any such construction of the statute, because I believe that it is contrary to its plain words and to our former decisions and to the ideas that were finally crystallized and embodied into our statute law. That ch. 50,

Laws of 1911, and its supplement, ch. 485 of the same year, were intended to provide an entirely new scheme for compensating injured employees, cannot be gainsaid. The old method had long been tried and was found to be illogical and unjust. It was not the purpose of the lawmakers that the two systems should run side by side. With the decision of the New York court of appeals in the *Ives Case* [*Ives v. South Buffalo R. Co.* 201 N. Y. 271, 94 N. E. 431] staring it in the face, the legislature shrank from passing a compulsory law, but it certainly did intend to change existing law so that employers would be at least as well off under the Compensation Act as they would be by refusing to take advantage of their option. So the 1911 Statutes proceeded to abolish the defenses of assumption of risk and negligence of a fellow-servant and at the same time to impose a higher degree of care on the master than he was before bound to exercise. These statutes not producing the results desired, in 1913 the defense of contributory negligence was abolished, leaving but two defenses in this class of cases,—no negligence on the part of the master and wanton or wilful misconduct on the part of the employee which contributed to his injury, the latter defense being available under the Compensation Act also.

If we read these statutes in the light of what was common knowledge when they were passed, there is very little force in the argument that the legislature could not have intended that appliances should be strong enough to stand the test of unusual contingencies because such a requirement would be unreasonable. What the legislature aimed to do was to sweep all employers not in the excepted class under the Compensation Act, and it was not much concerned with the inconvenience those who chose to stay out might suffer.

For our old acquaintances "ordinary care," "reasonably safe place in which to work," and "reasonable anticipation" there was substituted a plain duty,—the master was obliged

to furnish a safe place for the servant to work in (sec. 2394—48), and "safe" was defined to be "as free from danger as the nature of the employment would reasonably permit" (sub. (11), sec. 2394—41, Stats. 1913). This was made the test of the master's negligence. In every case the inquiry should be: Was the place as free from danger as the nature of the employment would reasonably permit? I think the former common-law rules have no place in the administration of this statute. Sec. 1636*j*, which required dangerous machinery to be guarded, was repealed in 1913, obviously because it was thought that it no longer fulfilled any useful function because of the enactment of sec. 2394—41 and sec. 2394—48.

I think that if a man in the course of his employment is injured by an improperly guarded machine, or in any other way, and the physical situation is such that the place of work might be made safe without undue interference with the carrying on of the work, then the master is negligent, and the question of whether he could reasonably anticipate that an injury might happen, or whether he exercised ordinary care in providing a safe place, is immaterial. I think the words "place of employment" refer to the physical situation.

The decision, it seems to me, practically gets us back to the common-law rule that where the master exercises ordinary care in providing for the safety of the employee he has performed his full duty.

When ch. 485, Laws of 1911, was first before the court for consideration, it was certainly thought that it materially changed existing law. It was said: "The statute in unequivocal terms requires the employer to furnish employment which shall be as safe for the employees as the nature of the employment will reasonably permit." And further: "This language leaves no room for construction, or question as to legislative intent." *Sparrow v. Menasha P. Co.* 154 Wis. 459, 465, 143 N. W. 317. If we interpolate into the statute

the rule of ordinary care or of reasonable anticipation, then we did not have the plain statute we thought we had, because we are not giving the words of the law their plain ordinary meaning, but are assuming that the legislature intended something more than the words used imply, and we are finding "room for construction" and "question as to legislative intent."

In the next case involving these statutes the court held that they made "some radical changes in the common law," and that the "safe place" spoken of undoubtedly referred to the "physical situation." It was held that the duty was absolute to make the place of employment as safe as the nature of the employment would reasonably permit. *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650. Now the question of reasonable anticipation or ordinary care is not involved in the performance of an absolute duty, and it was said in the *Rosholt Case* that the duty to furnish a safe place under the 1911 law was not different from that imposed on railroads by the fencing statute (sec. 1810), as construed in *Curry v. C. & N. W. R. Co.* 43 Wis. 665, 674, and *Ulicke v. C. & N. W. R. Co.* 152 Wis. 236, 139 N. W. 189, and at least as great as that imposed by the scaffolding statute (sec. 1636—81, Stats. 1911), as construed in the *Koepp Case,* 151 Wis. 302, 313, 139 N. W. 179. If the case presently before us is correctly decided, then I think the *Rosholt Case* was not correctly decided.

In the subsequent case of *Langos v. Menasha P. Co.* 156 Wis. 418, 424, 145 N. W. 1081, that part of the opinion in the *Rosholt Case* which holds that the absolute duty exists to furnish as safe a place as the nature of the employment will reasonably permit is quoted and approved.

The *Rosholt Case* is again approved in *Besnys v. Herman Zohrlaut L. Co.* 157 Wis. 203, 209, 147 N. W. 37, and again in *Mayhew v. Wisconsin Z. Co.* 158 Wis. 112, 118, 147 N.

W. 1035, and the rule of law as announced in the *Rosholt Case* is reiterated in *Sobek v. George H. Smith S. C. Co.* 158 Wis. 517, 149 N. W. 152.

I cannot reach the conclusion that a duty to furnish as safe a place in which to work as the nature of the employment will reasonably permit is performed when the employer furnishes as safe a place as he can reasonably anticipate will be necessary. One is an absolute duty and the other a qualified one.

I do not read the cases cited in the opinion as being in conflict with what was decided in the *Rosholt Case.* The *Montevilla Case* (153 Wis. 292, 141 N. W. 279) was decided without any reference being made to the 1911 statute, which was first called to the court's attention when the *Sparrow Case* was decided. It simply holds that there is no duty to warn where the master cannot reasonably anticipate that injury may happen. Applying as it does to the physical situation, the law of 1911 imposed no greater duty to warn than existed before. The common law was left intact in reference to the master's duty in this regard.

The *Kendzewski Case* (156 Wis. 452, 146 N. W. 516) arose under sec. 1636—81, Stats., which required the runway in question to be safe, suitable, and proper so as to give proper protection to life and limb. It was said, as in the *Koepp Case,* that the duty was absolute, but that it did not require that the place be made so safe that an employee could not be injured. It was further said that "safe" in the statute involved meant safe, suitable, and proper so far as human foresight, studiously applied, could make the place. The place must be so safe as to render personal injury so remote as to be merely within the realm of possibility. Tested by this rule, I think the master was negligent here. But the opinion continues: "The legislature has gone still further under the Workmen's Compensation Act; . . . but we are dealing with the particular statute applicable to the situation

in question." This reference to that act was no doubt due to the decisions that had already been made under it.

I think that the answer to question 1 of the verdict should have been changed from "Yes" to "No," and that question 2 should have been answered "Yes," and that judgment should have been rendered on the verdict as amended for the plaintiff for the amount of damages awarded by the jury.

SIEBECKER, J. I concur in the foregoing opinion of Mr. Justice BARNES.

A motion for a rehearing was denied, with $25 costs, on May 4, 1915.