LANGOS, Respondent, vs. MENASHA PAPER COMPANY, Appellant.

*February 24—March 17, 1914.*

*Master and servant: Unsafe working place: Absolute duty of master: Repairing machinery while in motion: Contributory negligence.*

1. Secs. 2394—48, 2394—49, Stats. (Laws of 1911, ch. 485), are applicable to all employers and all employees in this state, except those expressly exempted from their operation, and impose an absolute duty upon the employer to make the place of employment as free from danger as the nature of the employment will reasonably permit, and not to permit the employee to work in an unsafe place.

2. If this duty is not performed and injury is caused thereby to the employee, the liability of the master follows as a matter of course, in the absence of contributory negligence on the part of the employee.

3. Where a millwright employed in a paper mill was directed to repair a felt guide above the rolls of a drying machine, and undertook to do it while the machine was in motion, the superintendent and manager of the mill both being present and knowing how the work was being done and not objecting thereto or taking any steps to stop the machine, which could readily have been stopped without seriously interrupting the business, the jury were warranted in finding an omission of the statutory duty.

4. In such case, the conduct of the millwright in mounting the machine to make the repair while it was in motion, and the fact that he might have had the machine stopped but failed to do so, so far as they tend to show assumption of the risk

on his part, were immaterial, since assumption of the risk is no defense under the statute.

5. Upon the evidence in this case it was a question for the jury whether such millwright was guilty of contributory negligence, either in attempting to make the repair with the machine in motion, or in the way he descended from his position on the machine, during which descent his hand was caught between the rollers.

APPEAL from a judgment of the circuit court for Ashland county: G. N. RISJORD, Circuit Judge. *Affirmed.*

This is an action to recover damages for personal injuries received by the plaintiff while working for the defendant in its paper mill at Menasha.

The plaintiff, *Joseph Langos,* had been a mechanic for fifteen years. For a number of years preceding the accident he had been doing the work of a fireman and engineer on stationary engines. He entered the defendant's employment as fireman and worked at that for about a month, and in February, 1911, he began work as millwright in defendant's mill, which was his first engagement at work of the nature incident to this employment. He continued as millwright until he was injured June 10, 1912. His duties were to look after the machinery and see that all was in proper operative shape, and if there was anything wrong to fix it or to see to it that it was fixed. For this work he received $2.25 per day. He was under the control of the superintendent and was subject to his control and commands.

On the morning of June 10, 1912, after the mill had been started, about 7:30 o'clock a wooden guide which conducted the felt over the drier rolls in the drying machine was found to be broken. The defendant's superintendent, Torsrud, directed the plaintiff to make the repair by replacing the broken guide with a new one. The drier machine consists of a double tier of large heated rolls arranged in parallel lines in a long iron framework. This machine was operated with the general power by means of a separate clutch thrown in and

out by a lever.  Over the rolls was stretched a piece of canvas called the drier felt, over which the paper ran as it went through the machine.  The felt on the rollers was held in place by small counter rolls between the large rolls.  A large open framework covered the sides of the machine, and in this framework were the journals for the hubs of the rolls.  The machine stood east and west in a room 120 by 40 feet, with a considerable space to the north side.  It was necessary for the plaintiff, in fixing this broken stick, to measure its length. To do this he procured a small stick about nine feet long and one-fourth inch by three-eighths inch thick.  The machine stands about eighty-four inches high and is about 104 inches across.  The drier rolls are eighty-eight inches long and are placed five and one-half inches apart.  Between these are the felt or counter rolls, which are ninety-six inches long, four and one-half inches in diameter, and the space between these and the drier rolls is about one inch.  The guide stick which the plaintiff was to measure and replace was about five inches above the frame and ninety inches from the floor, and extends across the machine.

At the time of the accident the machine was running, but no paper was going through it.  After being told to fix the broken guide the plaintiff procured the above described stick and mounted the frame of the machine to take the measurement of the length of the broken guide stick.  He called to one of the men working on the other side of the machine to help him take the measurement.  This man mounted a platform which ran along on the south side of the machine and took the stick as plaintiff passed it to him and placed it flush with the end of the broken guide, while the plaintiff marked the length of it at the other end.  The plaintiff was standing with his right foot on the frame of the machine at the point marked 5 in the accompanying illustration, his left foot on the journal of the roll just below the point 5 and thirty-six inches from the floor, his left hand and arm thrown over the top of

the frame marked at A, and was taking the measurement of the guide stick marked 1. After the plaintiff had marked the length of the stick with his finger he told his helper to push the stick back and let go. The helper did so, and as he let go the stick dropped down onto the felt running under the counter rolls, snapped off near the end plaintiff held, leaving a piece about nine inches long in his hand, and the balance of the stick went in between the counter and drier rolls and broke into small pieces. *Langos* then turned to the right and took his right foot from its position on the frame and placed it on the projection of the frame some twenty-seven inches from the floor. He then turned and was looking for a place to put his left foot, which he had removed to a hanging position. He would, while looking for a place for his left foot, naturally turn to the left in so doing. While in this position his hand and arm came in contact with the moving felt and were drawn into the space between the counter roll and the hot drier roll at the point marked D in the illustration, and so injured him as to necessitate amputation above the elbow. Plaintiff cried out as he was injured, and Mr. Smith, the manager, and a Mr. Jensen, a machine tender, seized the lever and shut down the machine. Torsrud, the superintendent, removed the journal of the counter roll and freed his arm.

The three machine men and the superintendent were the only persons having authority to stop the machine for repairs or any other purpose, and upon call from the plaintiff to stop the machine it was their duty to do so. The machine was running when Torsrud, the superintendent, told *Langos* to fix the stick, and neither Torsrud nor any one else stopped the machine while the repairs were being made. The manager, Mr. Smith, was near the place where plaintiff came to mount the frame and remained there up to the time of the accident. The plaintiff had spoken to the superintendent about building a platform on the north side of the machine upon which to stand while doing any work about the machine, but was told

it was not necessary. There was in the room, and not far from the plaintiff at the time he mounted the machine frame to make the repair, a saw horse thirty-seven and one-half inches high, made of 4 x 4, and a crossbar made of 4 x 6, and the top face was four inches wide. The spread of the legs is less than forty-five degrees. The defendant claims that it would have been practicable for the plaintiff to have used this horse in making this measurement, while the plaintiff claims it would have been impossible to balance one's self and reach in over the top of the frame from the top of this horse; and that this horse was never used for any such purpose and that no suggestion for such use of it was ever made to him.

The plaintiff was confined to the hospital for some four weeks and suffered great pain and agony from this injury, and has ever since been obliged to go to the hospital for treatment and cannot follow his occupation as millwright. His wife and three children, aged four, six, and fourteen years respectively, are dependent on him for support.

The questions of the special verdict put to the jury and answered by them were as follows:

"(1) Did the defendant furnish Langos a place of employment in which to perform his duties which was safe? A. No.

"(2) If you answer question No. 1 'No,' then was the failure of the defendant to furnish a place which was safe the proximate cause of plaintiff's injuries? A. Yes.

"(3) Was the plaintiff guilty of any want of ordinary care which contributed proximately to his injuries? A. No.

"(4) What sum will reasonably compensate plaintiff for the injuries he received? A. $4,500."

Judgment was entered on the verdict in favor of the plaintiff and against the defendant for the sum of $4,655.26 damages and costs, from which judgment the defendant appeals.

For the appellant there was a brief by *Doe & Ballhorn* and *Wm. F. Shea,* and oral argument by *J. B. Doe.* As to defendant's duty and liability, they cited *Tallman v. Chippewa S. Co.* 155 Wis. 36, 143 N. W. 1054; *Sparrow v. Menasha*

*P. Co.* 154 Wis. 459, 143 N. W. 317; *Lueckel v. Preston,* 154 Wis. 429, 143 N. W. 173; *Priebe v. Hirsch,* 155 Wis. 181, 144 N. W. 287; *Montevilla v. Northern F. Co.* 153 Wis. 292, 141 N. W. 279; *Johnson v. Webster Mfg. Co.* 139 Wis. 181, 120 N. W. 832; and other cases. And upon the question of plaintiff's contributory negligence: *Hart v. Neillsville,* 141 Wis. 3, 123 N. W. 125; *Schultz v. C., M. & St. P. R. Co.* 116 Wis. 31, 92 N. W. 377; *Hansen v. Milwaukee C. & G. Co.* 155 Wis. 235, 144 N. W. 289; *Pierson v. Citizens' T. & T. Co.* 141 Wis. 117, 123 N. W. 642; *Schultz v. C. C. Thompson L. Co.* 91 Wis. 626, 65 N. W. 498; *Gossens v. Mattoon Mfg. Co.* 104 Wis. 406, 80 N. W. 589; *Bigelow v. Danielson,* 102 Wis. 470, 78 N. W. 599; *Gardner v. Paine L. Co.* 124 Wis. 338, 101 N. W. 700; *Hynes v. Holt L. Co.* 147 Wis. 172, 132 N. W. 889; *Houg v. Girard L. Co.* 144 Wis. 337, 129 N. W. 633; *Noetzel v. A. George Schulz Co.* 148 Wis. 106, 134 N. W. 381.

For the respondent there was a brief by *Sanborn, Lamoreux & Pray,* and oral argument by *A. W. Sanborn.*

SIEBECKER, J. The defendant contends that the trial court erred in denying its motions for a nonsuit and for a direction of the verdict in its favor, upon the grounds that the evidence in the case shows that the defendant furnished plaintiff a safe place of employment and that it adopted and used such methods and processes as were reasonably adequate to render his employment and place of employment safe. The statutes governing the case are embraced in ch. 485, Laws of 1911. The section of this chapter which controls the rights of the parties has been considered in recent cases, and we refer to the case of *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650, for an exposition of those parts that are applicable here. It is there declared:

"Said ch. 485 is applicable beyond any doubt to all employees and all employers in this state, excepting only such as

are expressly exempted from its operation. Sec. 2394—48 requires every employer, among other things, to furnish a place of employment *'which shall be safe for employees.'* Sec. 2394—49 provides that no employer *'shall require, permit or suffer* any employee to go or be in any employment *or place of employment* which is not safe.' Sec. 2394—41 provides that 'the term "safe" and "safety" as applied to an employment or a place of employment shall mean such freedom from danger to the life, health or safety of employees . . . as the nature of the employment will reasonably permit.' "

It is also declared in that case that these sections, in connection with others there cited, "make some radical changes in the common law as it existed when the act was passed," and that "the statute in terms imposes an absolute duty upon the employer to make the place of employment as free from danger as the nature of the employment will reasonably permit, and in the absence of contributory negligence the liability of the master follows as a matter of course if this duty is not performed and injury results to the employee because it is not performed." See, also, *Tallman v. Chippewa S. Co.* 155 Wis. 36, 143 N. W. 1054. The jury found that the defendant failed to furnish plaintiff a place of employment in which to perform his duties in making the repair on the paper machine which was safe, and that this failure on its part proximately caused the plaintiff's injuries. The trial court held that the evidence sustained these findings. The question is, Did the court err in holding that the evidence in the case sustains these findings? It is alleged that defendant failed to furnish the plaintiff a safe place of employment and that it required, permitted, and suffered him to go and be in a place of employment which was not safe because the paper machine was not stopped while plaintiff was required to repair the guide board, or felt guide, as described in the foregoing statement. This statement shows the nature of the repair the plaintiff was engaged at; the condition of the place on the machine where he stood; the method employed to perform

this duty while the machine was running. It appeared that the superintendent, under whom the plaintiff worked, discovered that the felt guide was out of repair shortly after the machine was started in the morning and that it required repair before any paper could pass through the machine, and that he directed the plaintiff to make the repair. Following this direction of the superintendent, the plaintiff procured the measuring stick and mounted the machine at the place and in the manner heretofore stated, in the presence of the general manager and while the superintendent was in the room and the machine was running. It also appears that the duty of starting and stopping the machine devolved on the superintendent and the machine tenders. The claims of the defendant are that the facts and circumstances bearing on defendant's alleged defenses do not support the finding that defendant failed to furnish the plaintiff a safe place of employment and that it required, permitted, or suffered him to go and be in an unsafe place of employment. On the first branch of this question, namely, whether or not the place where the plaintiff stood on the machine while it was running was as free from danger "as the nature of the employment will reasonably permit," there is hardly room for controversy. It seems plain that the machine could have been stopped without seriously interrupting the business, and that this obviously would have rendered the place of plaintiff's employment safe and would have avoided requiring, permitting, or suffering him to go or be in an unsafe place of employment. It is strenuously contended that defendant was not in default in permitting the machine to run while the plaintiff was so engaged in making the repair, and that the presence of the manager and superintendent, who were in the room and knew how the repair was being made, did not relieve the plaintiff, because it devolved on the plaintiff, under the circumstances of his employment and duties, to have the machine stopped, and the consequences of the machine not being stopped, under

the situation presented, are not attributable to the defendant under the statutory regulation. In considering this claim it is necessary that the ultimate questions of the plaintiff's contributory negligence and his assumption of the hazard incident to his employment be kept separate from defendant's absolute duties in the matter, though the same evidential facts may be relevant and material to all these inquiries. The plaintiff clearly ranked as a subordinate to Smith, the manager, and Torsrud, the superintendent, and was under express direction of the superintendent to repair this felt guide. The manager and superintendent both participated in directions and seeing that the duty was performed and must have known that the machine was then running. Their presence and conduct furnish a basis for the inference by the jury that they sanctioned the method of making this repair by the plaintiff while the machine was in motion, and that they thus required, permitted, and suffered the plaintiff to go and be in this place while performing this duty. Under these facts and circumstances the jury had to resolve the inquiry whether or not the defendant's representatives were guilty of an omission of duty in conducting the repair operation as was done and in requiring, permitting, or suffering the plaintiff to go and be in this place of employment while the machine was in motion. These inquiries are embraced in the first question of the spe- cial verdict, and under the evidence the jury were justified in answering it in the negative.

It is urged that the plaintiff was a millwright, and as suc it devolved on him to have the machine stopped if that w necessary to provide him a safe place of employment. heretofore stated, he was a subordinate to the manager a superintendent and under the express direction of the super tendent to make this repair. Under these relations of employment and the circumstances of the case, it is appai that his conduct in mounting the machine to make the re

while it was in motion, and his duties and authority in the matter, can bear only on the questions of his having assumed the hazard incident thereto and whether or not he was guilty of contributory negligence.

Since assumption of the risk is no defense, it remains to inquire whether or not the plaintiff was guilty of contributory negligence as a matter of law. The evidence shows that his superiors in authority evidently did not regard the stopping of the machine as necessary to make the place of the plaintiff's employment as safe as the nature of the employment would reasonably permit. As we have pointed out, their conduct in this regard was a subject for inquiry by the jury, who found them guilty of a breach of duty in requiring, permitting, or suffering the plaintiff to go and be in an unsafe place under the statutory regulations governing this case. In the light of all the facts and circumstances, it cannot be said the plaintiff was guilty of contributory negligence as a matter of law in going and being in this place to make the repair in question without first requesting the machine to be stopped, nor do the facts show as a matter of law that he was negligent in the way he descended from his position on the machine and when his hand was caught between the rollers. An uncertainty as to the plaintiff's contributory negligence inheres in the case which requires that it be submitted to the jury. *Klotz v. Power & M. M. Co.* 136 Wis. 107, 116 N. W. 770. The court properly submitted this question to the jury, who resolved it in the negative.

We have examined the exceptions respecting the court's rulings on evidence and find that no prejudicial error was committed by the court. Upon the facts adduced in evidence the jury were authorized to find that the defendant failed in performing its duty toward the plaintiff in the respects hereinbefore indicated, which proximately caused the plaintiff's injuries, and that he was free from contributory negligence;

we therefore do not discuss the alleged errors bearing on other grounds of negligence. The record presents no reversible error, and the court properly awarded judgment.

*By the Court.*—The judgment is affirmed.

TIMLIN, J., dissents.