VAN DE ZANDE, Respondent, vs. CHICAGO & NORTHWEST-ERN RAILWAY COMPANY, Appellant.

*December 6, 1918—April 2, 1919.*

*Master and servant: Injury to railway employee jumping from box car: Unsafe working place: Question for jury.*

Where a railway section hand was injured by jumping to the ground (a distance of about fifty-four inches) from the door-way of a box car in which he had been working, a finding by the jury that the injury was caused by the railway company's failure to furnish him a place of employment which was as free from danger as the nature of the employment reasonably permitted was within the jury's province and should not be disturbed. VINJE, KERWIN, and ROSENBERRY, JJ., dissent.

· APPEAL from a judgment of the municipal court of Brown county: N. J. MONAHAN, Judge. *Affirmed.*

The plaintiff, a man about forty years of age, had been for many years a section hand for defendant and claimed to have been injured July 28, 1916, by jumping to the ground from the doorway of a box car in which he had been working unloading ties. His work required him and the others to frequently get in and out of such cars. He being five inches shorter than the average man, frequently received assistance by way of boosting in getting into such cars. On this occasion he did, as he had frequently done and as he had seen others do, stoop down at the open door, place one hand upon the floor of the car, which was about fifty-four inches high, and then jump to the ground between two tracks there, and alighting on both feet he felt a sharp pain in his left hip. There was medical testimony from which it might be found that such jolt or jar might have resulted in the permanent impairment in the use of and pain suffered in his left leg to which he testified.

· The jury by special verdict found that the proximate cause of his injuries was defendant's failure to furnish him a place of employment which was as free from danger to his safety as the nature of the employment reasonably permitted, and from judgment in plaintiff's favor upon such verdict for the amount assessed for his damages defendant appeals.

For the appellant there was a brief by *Edward M. Smart,* attorney, and *R. N. Van Doren,* of counsel, both of Milwaukee, and oral argument by *Mr. Van Doren.*

For the respondent there was a brief by *Kaftan & Reynolds* of Green Bay, and oral argument by *R. A. Kaftan.*

The following opinions were filed January 7, 1919:

ESCHWEILER, J. The plaintiff's employment at the time of the injury not being within the field of interstate com-

merce, and it being conceded that the parties were not subject to the provisions of the workmen's compensation act, this appeal presents but the very narrow question as to whether the trial court should have held as matter of law that plaintiff's injuries were not caused by any violation by defendant of the statutory obligations toward plaintiff imposed upon it by secs. 2394—48, 2394—49, Stats.

These statutes provide, among other things, that the employer "shall furnish a place of employment which shall be safe for employees therein, . . . shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees;" that "no employer shall require, permit or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employers shall . . . fail to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no such employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety or welfare of such employees."

The absolute nature of the statutory obligations thereby placed upon the employer of labor as to the safety of place, process, and method in and about the employment, and that the regulation applies as well to the place where the employment is carried on, as here, but temporarily, as well as to the place of continuous or permanent employment, by sub. (1), sec. 2394—41, Stats., all has been so often stated that it is unnecessary now to either paraphrase or repeat what has been so repeatedly decided by this court. *Kielar v. Fred Miller B. Co.* 165 Wis. 237, 241, 161 N. W. 739; *Sullivan v. C., M. & St. P. R. Co.* 163 Wis. 583, 158 N. W. 321; *Mayhew v. Wis. Z. Co.* 158 Wis. 112, 147 N. W. 1035; *Murphy v. Interlake P. & P. Co.* 162 Wis. 139, 155

N. W. 925; *Kelly v. Kneeland-McLurg L. Co.* 161 Wis. 158, 152 N. W. 858; *Kuligowski v. Kieckhefer B. Co.* 160 Wis. 320, 151 N. W. 808; *Kendzewski v. Wausau S. F. Co.* 156 Wis. 452, 146 N. W. 516; *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650.

That countless thousands of railroad employees and others have undoubtedly made just such exits from box cars without receiving injuries; that such a method of making a descent is so similar to that pursued so successfully and repeatedly and almost from an equal height from time immemorial by the farmer boy who, jocund, leaps with the lark at break of day, and, still jocund, leaps from his wagon at the dinner horn's bray; that the drop in the space between the floor of the car and the ground may be so materially lessened by the apparently simple expedient of either by an anterior or posterior outward exposure of the body allowing the legs to dangle down the side of the car and then sliding the balance of the way, all present such considerations as to give great weight to appellant's contention here; that contention being that under our decisions upon the statutes herein involved, the master is not an insurer of the safety of the employee, but only such as to the safety of place or process, and that therefore the employer could not reasonably be expected to anticipate and guard against some such result as here claimed to one who voluntarily chose the greater rather than the lesser of the fields open to him in a practical application of the law of falling bodies, or that injury might result from a method theretofore pursued with seemingly invariable safety.

In view, however, of the rapid changes and improvements in safety of place, process, and methods of employment in the industrial world constantly going on and seemingly in almost geometrical rather than arithmetical progression, and of the imperative language of the legislature, we do not feel that we can say that the situation here is

one within the domain in which the court must pronounce the final yea or nay as a question of law, rather than one within the province of the jury.

That this is the first recorded occurrence brought to our attention or apparently to be found in the decisions of other jurisdictions of such a peculiar and serious result following such a customary practice, while quite persuasive as an argument against our upholding the decision of the trial court and the jury, yet cannot, of course, of itself be a controlling reason for requiring us to hold that it does not give rise to a liability under this new statute or that from its mere priority it bars the injured one from his otherwise proper relief.

The jury in this case had before them evidence that while the section crew of which plaintiff was a member had furnished to them tools to work with, such as picks and pinchbars, but no ladders, yet that the repair men working alongside them in the same yard had ladders furnished them to climb into as well as upon such cars; they might also have considered that which is matter of common knowledge, that the ends of just such box cars as well as freight cars are supplied with extensions to the side or end ladders in the shape of one or more ladder rungs outside and below the floor or platform of the car, which such extensions, while primarily no doubt for assistance in ascending, yet nevertheless, to the extent of their length, do lessen the height of any drop from the car, and that none such were supplied at the doors of box cars; and furthermore, the facts, also matters of common knowledge, that a great share of the ordinary loading and unloading of merchandise into and from such cars in the traffic for which such box cars are primarily used is done at platforms of the same height as the car floors and needing for such work, therefore, no climbing in or jumping out as was necessary in the use required of them on this occasion. If the jury considered this particular use of box cars as in the nature

Van de Zande v. Chicago & N. W. R. Co. 168 Wis. 628.

of a special use they may have considered that the furnishing of some special means for getting out of such cars on such an occasion was within the field of the master's duty prescribed by the statute before us.

It was therefore within the province of the jury's discretion to find as it did in answering the first question of the special verdict, and with that exercise thereof we cannot see our way clear to interfere.

*By the Court.*—Judgment affirmed.

VINJE, J. *(dissenting).* Fortunately there is no divergence of opinion among the members of this court as to the beneficent purpose of our safe-place statute, and fortunately also we all agree that it should receive a liberal construction in order to effectuate that purpose. But unfortunately in its application to particular situations differences of opinion may well, and do at times, arise. This is such an occasion. Bearing in mind that the statute does not impose a duty upon the employer to make the place of employment absolutely safe, but only as free from danger as the nature of the place of employment will reasonably permit (sub. (11), sec. 2394—41), three members of the court have reached the conclusion that in this case the statutory duty had been met by the defendant. The place of employment was a standard box car situated upon a level track on level ground. If it was unsafe, then every standard box car in the country is unsafe in a like situation upon coming within our state. The proposition asserted by the court is that it is not reasonably safe for the average workman to descend from a platform four and one-half feet from the ground without the use of a ladder or steps. The verdict of the jury can have but little weight because the facts are obvious and undisputed. The situation is so simple and common that it addresses itself to one's experience and perception rather than to reason and judgment. Being so simple and common, it is strange that its unsafe

character should have remained undiscovered till now. We
have had nearly a century of railroading. Our legislature
and the Congress have passed laws with reference to rail-
road safety devices. Our railroad commission and the in-
terstate commerce commission in executing such laws have
had occasion to go into great detail in their provisions with
reference thereto, but none have even considered the sub-
ject of providing standard box cars with ladders or steps
at the doors for the use of those who load or unload them.
But this may have been merely an oversight which the ver-
dict of a jury, approved by the court, is now expected to
remedy. Dangers, however, inhere in the cure as well as
in the disease, for ladders are treacherous, steps must per-
force at times be wet and slippery, and the footing inse-
cure. So at best the remedy is but partial and of doubtful
value even if used. That it would be generally used if fur-
nished is by no means certain. That it is necessary is nega-
tived by an experience covering nearly a century and by the
fact that at least three modes of exit, each reasonably safe
and convenient, may be resorted to. First, the way plaint-
iff did, by putting the hand on the door-sill and jumping
down, no doubt the most natural and usual way; second,
by sitting in the doorway with the feet hanging outside and
dropping from there to the ground, a distance of about two
feet; or, third, by sliding over the door-sill upon the ventral
side of the body till the feet reach the ground, and so make
the descent without any jar at all. These several easy
means of exit would seem to render the place reasonably
safe, even if past experience did not record it so. The fact
that an injury may occur or has occurred in a certain place
does not argue that such place is unsafe within the meaning
of the statute, for accidents may happen in the safest of
places. At any rate, when it appears that a place has for
a very long time been continuously used by a large number
of persons without injury to them, it ought not to be char-

acterized as unsafe because in its use some one may at rare intervals be injured.

KERWIN AND ROSENBERRY, JJ. We concur in the dissenting opinion of Mr. Justice VINJE.

A motion for a rehearing was denied, with $25 costs, on April 2, 1919.