NORTHWESTERN CASUALTY & SURETY COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Appellants.

*November 9—December 6, 1927.*

*Workmen's compensation: Safety devices: Failure to stop engine while making repairs.*

1. Where deceased, who had been shoveling gravel into a hopper but stepped aside, was caught in a belt idling on the pulley of the engine operating the conveyor during a temporary shutdown while making repairs, and was killed, claimant was not entitled to increased compensation under par. (h), sub. (5), sec. 102.09, Stats., the accident being due primarily to a failure to stop the engine, and not to a failure to furnish a safe place of employment, in violation of sec. 101.06 and sub. (1), sec. 101.07, Stats. p. 341.

2. In sec. 101.06, Stats., requiring an employer to furnish a safe place of employment and to do "every other thing" reasonably necessary to protect employees, the quoted phrase relates to things of the same kind that the employer must necessarily do in making the place safe, and does not forbid use of the premises, though such use may give rise to a temporary hazard. p. 341.

APPEAL from a judgment of the circuit court for Dane county: A. G. ZIMMERMAN, Circuit Judge. *Affirmed.*

Increased compensation on the ground that the employer. did not furnish the employee a safe place of employment. The *Industrial Commission* stated the material facts as follows:

"Theodore Nockerts, deceased, had been employed by Theodore J. Coenen in the operation of a gravel crusher. The machinery consisted of a hopper and gasoline engine to operate the conveyor to a stone crusher. The pulleys about which the conveyor moved were connected with the gasoline engine by a five-inch belt which was approximately twenty-eight or thirty feet long. At the time of the injury, the pulley on the conveyor to which this belt was attached was somewhat out of alignment and the man in charge of the operations was fixing it. He had taken the belt off from this pulley and thrown it loosely upon the ground, leaving the belt idling about the pulley on the gasoline engine. The deceased had been shoveling gravel into the hopper, and for some reason or other, which is immaterial in consideration of liability herein, had stepped over to a point near the pulley which was being adjusted. For some unknown reason the belt was caught on the pulley about which it had been idling and Nockerts was drawn to and around the pulley. Apparently his foot had been caught in a loop of the belt. By the time the engine was stopped it was found that he was dead."

Upon these facts the *Commission* found that the employer was not furnishing deceased a place which was safe at the time that he sustained the fatal injury and awarded increased compensation under the statute. This action was begun to review the award, and upon the hearing in the circuit court for Dane county the award for increased compensation was

vacated and set aside, from which judgment the *Industrial Commission* and the claimant appeal.

For the appellant *Industrial Commission* there was a brief by the *Attorney General, Hugh A. Minahan,* deputy attorney general, and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondents the cause was submitted on the brief of *Shaw, Muskat & Sullivan* of Milwaukee.

ROSENBERRY, J.   The authority of the *Industrial Commission* to award increased compensation is found in par. (h), sub. (5), sec. 102.09, Stats., as follows:

"(h) Where injury is caused by the failure of·the employer to comply with any statute of the state or any lawful order of the industrial commission, compensation and death benefits as provided in sections 102.03 to 102.34, inclusive, shall be increased fifteen per cent."

Sec. 101.06 requires every employer "to furnish a place of employment which shall be safe for employees therein . . . and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing·reasonably necessary to protect the life, health, safety, and welfare of such employees. . . ."

Sub. (1) of sec. 101.07 provides:

· "No employer shall require, permit or suffer any employee to go or be in any employment or place of employment which is not safe, . . . and no such employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety or welfare of such employees and frequenters; and no employer or owner, or other person shall hereafter construct or occupy or maintain any place of employment, or public building, that is not safe, nor prepare plans which shall fail to provide for making the same safe."

It is the contention of the defendants that whether or not the safe-place statute was violated was a question of fact and that the determination of the *Industrial Commission* thereon .

is conclusive upon the court. The position of the plaintiffs is well stated in the opinion of the trial judge:

"It seems clear and beyond misunderstanding that the accident occurred solely (aside from any negligence on his part) because of failure and neglect to stop the running of the engine while the repairs were being made—that is to say, not because of any fault whatever in providing any unnamed possible or impossible safety appliances or places, but solely because of the fault and negligence of somebody in the operation of the plant and engine in not having the engine stopped while the belt was necessarily off the upper pulley during the repairing.

"While the foregoing situation does not excuse the employer from paying compensation, it seems clear beyond misunderstanding that it was merely negligence and lack of proper precautionary measures taken in the operation of the plant, and not in the plant itself.

"The very failure of the *Commission* to find and point out any defect in the plant indicates that the cause must have been elsewhere—to wit, in its operation, as so clearly appears."

The facts being undisputed, it is necessary to interpret and apply the statute in order to reach a determination. The question presented is therefore one of law and not of fact. The statute requires the employer to furnish a "safe" place of employment, but does not attempt to define "safe place" unless the last clause, "shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees," performs that office. These words certainly indicate the purpose and scope of the statute and in general terms define what it is necessary for the employer to do in order to comply with the statute. A place of employment may be unsafe because of structural defects, failure to guard machinery would be one instance; or because of the improper arrangement of the premises, setting machines too closely together or requiring employees to work in close proximity to moving machinery might be an instance; or because of defective appliances, defective tools or machines, or because of improper methods or processes employed, a

method which permitted the escape of deleterious gas would furnish an illustration.    The premises must be reasonably safe when in operation as well as at rest.    The language "and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees" is certainly very broad,—broad enough standing by itself to include within its terms the failure of the employer to close down the operation when a continuance thereof would render the place of employment unsafe, even though the condition arose from accident.    If the statute be interpreted as if it read "shall do every other thing reasonably necessary to avoid structural defects, improper arrangement of the premises, the use of unsafe appliances and tools, the adoption of improper methods and processes to protect the life, health, safety and welfare of such employees," it would not include a hazard which was the result of an accident in the ordinary operation of the plant which was in all other respects in compliance with the statute.

In the interpretation of this statute the maxim *Noscitur a sociis* is applicable.    25 Ruling Case Law, 995, and cases cited.    The "every other thing" which the employer is required to do relates to things of the same kind that the employer must necessarily do in making the place safe.    The statute does not forbid the employer from using the premises even though such use may give rise to a situation which creates a temporary hazard.    The safe-place statute does not make the employer an insurer against accident.

In this case the defect was being removed as rapidly as the nature of the business permitted.    The premises were not being used at the time of the accident, work was suspended in an endeavor to make the place safe.    As the trial court points out, the belt was idling and the accident was due primarily to the failure of some one to stop the engine.    It is considered, therefore, that the trial court correctly held that the fifteen per cent. penalty was unlawfully imposed.

*By the Court.*—Judgment affirmed, without costs.