ESTATE OF TEASDALE: TEASDALE (Flora) and others, Appellants, vs. TEASDALE (Howard) and others, Respondents.

*March 31—May 5, 1953.*

For the appellants there were briefs by *Aberg, Bell, Blake & Conrad, Wm. J. P. Aberg, Glen H. Bell,* and *Charles P. Siebold,* all of Madison, and *Rice, Rice & Rice* and *Z. S. Rice,* all of Sparta, and oral argument by *Mr. Aberg* and *Mr. Seibold.*

4

For the appellant Flora Teasdale there was a brief by *Bull & Biart* of Madison, and oral argument by *Benjamin H. Bull.*

For the respondents Howard Teasdale and Joseph Teasdale there was a brief by *Donovan, Gleiss, Goodman, Breitenfield & Gleiss* of Sparta, and oral argument by *Leo J. Goodman* and *William M. Gleiss.*

For the respondent Loretta Teasdale there was a brief by *Winton & Winton* of Shell Lake, and oral argument by *Ward Winton.*

MARTIN, J. It is conceded that five separate requirements must be met by the trustees before a new trial will be granted on the ground of newly discovered evidence:

1. The evidence must have come to their knowledge after the trial.

2. They must not have been negligent in seeking to discover it.

3. The evidence must be material to the issue.

4. The evidence must not be merely cumulative to testimony introduced at the trial.

5. It must be reasonably probable that a different result would be reached on a new trial.

There is no argument on the first point.

Applications for a new trial on this ground are looked upon with suspicion and disfavor, the presumption being that the failure to discover such evidence is due "either to intentional omission, or unpardonable neglect" of the moving party. In order to rebut this presumption "his excuse must be so broad as to dissipate all surmises to the contrary." *Edmister v. Garrison* (1864), 18 Wis. *594, *603, *604.

It is not necessary to discuss the second point in detail, but under the above rule we must view the facts surrounding the discovery with suspicion. The only reason stated for not finding the document prior to the hearing was that Flora

M. Teasdale, who had custody of all the testator's papers, was indisposed for many months before the hearing in January, 1951, but that does not explain why it was not found at any other time during the fourteen years following Howard Teasdale's death.

Appellants' argument with respect to materiality is based upon the contention that there is a latent ambiguity in the will of Howard Teasdale; that the document now offered not only shows that ambiguity but explains it. We cannot agree with this contention. It was held in *Estate of Teasdale, supra* (p. 258):

"The cash value of the gross estate on the day preceding the death of the testator is what the will demands. The trustees ignored that direction, admittedly sought a 'real,' not the cash, value and then certified that which they considered the real value was the cash value as of the day before the death. This was an arbitrary departure from the directions imposed on them by the will. . . ."

Having thus determined that the will clearly expressed the testator's intention in the use of the words "gross cash value," we cannot now give weight to a document purporting to show what he thought his estate was worth as introducing a latent ambiguity in the use of those words.

Appellants contend that the document bears directly on what the testator meant when he directed his trustees to determine "gross cash value" in that it shows "his belief as to the value of his property and hence the amount he intended Mrs. Teasdale to receive."

Looking to the document itself, there is nothing to show that the testator had used it or that he intended it to be used by anyone else in connection with his will. He was an able lawyer and a very successful businessman. If he had intended, as appellants argue, that his appraisal of his net worth should have a bearing on the trustees' determination of "gross cash value," it may be assumed he could have made

reference to such an appraisal in the will itself. In any event, it is hardly possible that, even without such reference, he would have prepared such an appraisal, intending it should be so used, in the form of this document, which on its face is simply an application for credit. Moreover, he would have placed it with his important papers rather than in a box of discarded notes.

Upon the basis of these facts and circumstances, we do not see that the document is material, but even if it is, its materiality is merely cumulative.

There are repeated references in the testimony by the trustees to their examination of testator's books and records and "inventory." Mr. Morrill, one of the trustees, testified in response to a question regarding the valuation of the Monroe County Telephone Company stock:

"Going back to the inventory of Howard Teasdale, Sr., I think that I recall that prior to his death, 1934, 1935, or 1936, he set a value on the Telephone Company which was largely in excess of any we put."

Again, with respect to the valuation placed upon certain real estate, Mr. Morrill testified:

"I got those figures from the books of Senator Teasdale. I used my own judgment in interpreting them."

Mrs. Teasdale testified:

"We didn't sit down in an afternoon and write these off. Mr. Teasdale had figures of inventories. We checked to 1928, and way back to 1927. Of course, we considered his values. If he knew the value and put it down hasn't he any right to make a valuation on his own property? I had written inventories and he would tell me what things were worth."

Since the documents and records referred to in such testimony were not offered in evidence, the court has no way of knowing how they would compare with the document here

in question except that the valuations placed upon his property by the testator in the inventories considered by the trustees were, as in this document, greater than those fixed by the trustees. There is no question, however, that the material they referred to was intentionally made available to them by the testator. The fact that he did not make the document here offered available in the same way would indicate that he considered it of no value. Even if he had inadvertently placed it with discarded papers, we cannot see that it differs in character and import from the other material the trustees had examined and considered in making their determination, and which the court rejected on the prior appeal.

The granting of a new trial on the ground of newly discovered evidence rests within the sound discretion of the trial court and its determination will not be set aside unless it is shown to be a clear abuse of such discretion. *Jacobsen v. State* (1931), 205 Wis. 304, 237 N. W. 142; *Gray v. Gray* (1939), 232 Wis. 400, 287 N. W. 708; and cases there cited. We do not find in this case any abuse of discretion by the trial court in denying the motion.

*By the Court.*—Order affirmed.