ZERNIA and another, Appellants, v. CAPITOL COURT CORPORATION, Respondent.*

*October 1—October 29, 1963.*

---

* Motion for rehearing denied without costs, on December 20, 1963.

For the appellants there was a brief and oral argument by *William W. Apter,* attorney, and *Howard H. Boyle, Jr.,* of counsel, both of Milwaukee.

For the respondent there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Howard H. Koppa* and *John R. Hoaglund, Jr.,* of counsel, and oral argument by *Kurt H. Frauen,* all of Milwaukee.

HALLOWS, J. The issues on appeal are: (1) Whether there was a credible evidence to sustain the verdict; (2) whether the court was in error in denying a new trial; and (3) whether the damages were inadequate.

The first question requires a review of the material facts. The accident occurred approximately 10:30 on December 28, 1957, a Saturday morning, in the east parking lot immediately in front of Schuster's store at the Capitol Court shopping center in Milwaukee. During the preceding evening rain or snow had fallen. The temperature was a little above freezing and about 1 a. m. the service manager of the defendant became concerned about the weather, called the guard on duty and left instructions to be called if the weather conditions became worse, and also called the weather bureau. The defendant's maintenance foreman arrived at the parking lot about 5:30 a. m. At that time there was a freezing drizzle and the parking lot was slippery. He in-

structed the regular maintenance crew to start salting and sanding the 44-acre parking-lot area. The maintenance crew consisted of five men including a supervisor, and the equipment consisted of a flatbed truck, a jeep, and a three-wheel motor vehicle known as a Cushman carrier. The truck was used on the parking lot, the other equipment elsewhere. The rain stopped shortly after 6 a. m. At 7:30 a. m. the service manager, having been alerted by the guard, ordered an independent contractor to be called to augment the regular maintenance crew. The independent contractor used two trucks and two laborers to spread sand. By 8:30 in the morning the parking lot had been sanded once and a second operation begun. By 4 p. m. when the sanding was completed the parking lot had been gone over three times and 15 tons of salt and sand had been used.

The plaintiffs arrived at the parking lot about 10:30 a. m., parked their car a distance of three to five stalls from the entrance to Schuster's and proceeded toward Schuster's up an aisle of the parking lot. There is some conflict in the testimony whether Mrs. Zernia at the time she slipped was alone or whether she was alongside Mr. Zernia attempting to take hold of his arm. She testified the place where she slipped had no sand or salt thereon. An employee of Schuster's also testified he did not recall seeing any sand at the place Mrs. Zernia slipped. As a result of the fall, Mrs. Zernia fractured her 12th dorsal vertebra, was in the hospital some twenty-two days, and suffered pain and suffering and some permanent disability.

The appellants argue a shopping-center parking lot which is slippery by reason of ice cannot be considered as safe as its nature reasonably permits because there is nothing in its nature which prevents the owner from completely sanding it. The safe-place statute, secs. 101.06 and 101.01(11), Stats., applied to this case required the defendant-owner to maintain the parking lot as free from danger as the nature of the lot reasonably permitted. No doubt such place could

be made absolutely safe but that is not the duty of the owner under the safe-place statute. He is not an insurer. *Powless v. Milwaukee County* (1959), 6 Wis. (2d) 78, 94 N. W. (2d) 187. Whether the owner has fulfilled his higher duty than ordinary care depends upon the facts and circumstances existing at the time of the accident. In *Werner v. Gimbel Brothers* (1959), 8 Wis. (2d) 491, 99 N. W. (2d) 708, 100 N. W. (2d) 920, we stated it was a question of fact for the jury whether the defendants' actual or constructive notice of the unsafe condition of a walk next to the parking lot warned them in time to require them to take reasonable precautions to prevent such an accident. No such question is raised in this case.

The real question is whether the defendant's activities, sanding and salting the parking lot, measured up to its duty of care to make it as safe as its nature would reasonably permit. We must view the evidence most favorable to sustain the verdict; [1] the evidence shows the defendant was aware of the climatic conditions which could create a dangerous condition on the parking lot and as soon as it started to freeze the regular maintenance crew started to sand and salt and extra help was obtained. If the defendant had stopped with one application of sand and had considered that as the fulfilment of its duty, the question would be a much-closer one. However, the defendant continued to sand in the performance of its duty and resanded and resalted the parking area until approximately 4 o'clock in the afternoon. The jury could find that at 10:30 a. m. when the plaintiff was injured the defendant was maintaining the parking lot as safe as its nature would reasonably permit considering its size, the equipment and manpower used, and

---

[1] *Warden v. Miller* (1901), 112 Wis. 67, 87 N. W. 828; *Kalish v. Milwaukee & S. T. Corp.* (1955), 268 Wis. 492, 67 N. W. (2d) 868; *Dickman v. Schaeffer* (1960), 10 Wis. (2d) 610, 103 N. W. (2d) 922; *Bleyer v. Gross* (1963), 19 Wis. (2d) 305, 120 N. W. (2d) 156.

the weather. The contention of the plaintiff would require us to hold as a matter of law that by 10:30 in the morning the parking lot should have been sanded and salted in such a way that the plaintiff could not have slipped. That we will not do. The defendant's duty did not extend to making the parking lot absolutely safe. At the time of the accident, the defendant was using more than ordinary care to fulfil its statutory duty.

The plaintiffs contend the only evidence of sanding the place of the accident was that two men on a truck threw salt and sand over its sides and thus there is no direct testimony the aisles were sanded where plaintiffs necessarily had to walk. We do not consider this a fair interpretation of the evidence, but in any event we cannot say it was the duty of the defendant to sand every square foot of the parking lot by 10:30 on that morning.

The plaintiffs sought a new trial on the ground of newly discovered evidence, pointing out the verdict must stand partially on the testimony of witness Kretlow, the maintenance foreman, as to the sanding of the area where the plaintiff fell. Kretlow's testimony concerning the sanding on that morning is attacked on the grounds the witness had not previously discussed his day's activity with anyone until the day of the trial; that he had made no written report and that there were probably 100 times when the same sanding operation was done; all of which raises a question of the witness' credibility or accuracy of memory. The witness stated he remembered the day in question because, "Them are the worst days working around there." The newly discovered evidence was set forth in an affidavit of the superintendent of the bureau of street sanitation of the city of Milwaukee and was to the effect that the day in question was one of "moderate icing condition."

The granting or the refusing of a new trial on the ground of newly discovered evidence rests largely in the discretion

of the trial court.[2] The conditions for granting the motion are: (1) The evidence must have come to the moving party's knowledge after the trial, (2) he must not have been negligent in seeking to discover it, (3) the evidence must be material to the issue, (4) the evidence must not be merely cumulative to testimony introduced at the trial, and (5) it must be reasonably probable that a different result would be reached on a new trial.[3] The trial court held the plaintiffs had not met points (2) and (5) of the test. There is a question of the correctness of the ruling as to point (2), but we agree the newly discovered evidence would not make it reasonably probable a different result would be reached upon a new trial. The nature of the evidence is more for impeachment than proving any conflicting facts. It may well be the superintendent of the Milwaukee bureau of street sanitation may have considered the day to be one of "moderate icing condition" for his purpose and witness Kretlow could well have considered the same day to be a "worst day" for the performance of his duties. In any event the newly discovered evidence is not of such probative value as to justify a finding, in view of the other evidence, that the defendant did not sand the parking lot on the morning and prior to the accident. We find no abuse of discretion in the trial court's denying a new trial.

What we have said makes it unnecessary to extend this opinion by a discussion of the nature of the injuries suffered by Mrs. Zernia and of the adequacy of the damages awarded. Such matters are important only if a new trial were granted.

*By the Court.*—Judgment and order affirmed.

---

[2] *Birdsall v. Fraenzel* (1913), 154 Wis. 48, 142 N. W. 274; *Foreman v. Milwaukee E. R. & L. Co.* (1934), 214 Wis. 259, 252 N. W. 588; *Erickson v. Clifton* (1953), 265 Wis. 236, 61 N. W. (2d) 329; *Estate of Kemman* (1960), 11 Wis. (2d) 392, 105 N. W. (2d) 769.

[3] *Erickson v. Clifton, supra; Estate of Teasdale* (1953), 264 Wis. 1, 58 N. W. (2d) 404; *Hoffman v. Buggs* (1959), 6 Wis. (2d) 488, 95 N. W. (2d) 237.

The following opinion was filed January 23, 1964:

PER CURIAM (*on motion for rehearing*). The appellants have moved for rehearing and have pointed out that in its original opinion in this case the court referred to the duty of an employer under the safe-place statute and then added, "He is not an insurer." In their motion for rehearing, the appellants have cited two cases in which this court has previously stated that the employer is an insurer under the safe-place statute and a number of cases in which we have stated that the statute imposes upon an employer "an absolute duty."

Because of an apparent inconsistency between the statement of the court in the original opinion and in prior opinions, this memorandum is being filed.

The two cases cited by the appellants where this court has described the employer's duty under the safe-place statute, sec. 101.06, as that of an insurer are *Van de Zande v. Chicago & N. W. R. Co.* (1919), 168 Wis. 628, 170 N. W. 259, and *Kendzewski v. Wausau S. F. Co.* (1914), 156 Wis. 452, 146 N. W. 516. On the other hand, in at least the following cases, this court has said that an employer is not an insurer under the safe-place statute. *Raim v. Ventura* (1962), 16 Wis. (2d) 67, 71, 113 N. W. (2d) 827; *Zehren v. F. W. Woolworth Co.* (1960), 11 Wis. (2d) 539, 543, 105 N. W. (2d) 563; *Rosenthal v. Farmers Store Co.* (1960), 10 Wis. (2d) 224, 227, 102 N. W. (2d) 222; *Powless v. Milwaukee County* (1959), 6 Wis. (2d) 78, 81, 94 N. W. (2d) 187; *Paluch v. Baldwin Plywood & Veneer Co.* (1957), 1 Wis. (2d) 427, 432, 85 N. W. (2d) 373; *Boutin v. Cardinal Theatre Co.* (1954), 267 Wis. 199, 204, 64 N. W. (2d) 848; *Hipke v. Industrial Comm.* (1952), 261 Wis. 226, 233, 52 N. W. (2d) 401; *Northwestern C. & S. Co. v. Industrial Comm.* (1927), 194 Wis. 337, 341, 216 N. W. 485. See also *Manitowoc Co. v. Industrial Comm.* (1956), 273 Wis. 293, 297, 77 N. W. (2d) 693.

An examination of *Kendzewski v. Wausau S. F. Co.,* *supra,* 156 Wis. 452, reveals that that case did not involve the safe-place statute and therefore does not support the proposition that the safe-place statute makes the employer an insurer. The statute involved in the *Kendzewski Case* was sec. 1636–81, Stats. 1911. The statute which is now the safe-place statute, sec. 101.06, was then sec. 2394–48, Stats. 1911. The distinction between the two statutes was discussed in *Olson v. Whitney Bros. Co.* (1915), 160 Wis. 606, 150 N. W. 959. It was there noted (*supra,* p. 609) that sec. 1636–81, Stats. 1911, was repealed by ch. 588, Laws of 1913. That statute prohibited an employer in certain kinds of labor from furnishing scaffolding, hoists, stays, ladders, or other mechanical contrivances that were "unsafe, unsuitable or improper." The statute did not define the words "unsafe, unsuitable or improper." This court noted (*supra,* p. 609) that the statute was construed by applying to the words "unsafe, unsuitable or improper" their usual meaning, and so it was held that if an unsafe appliance of the kind mentioned was furnished and an accident to an employee resulted while engaged in the labor specified in the statute, the employer was liable unless he could show assumption of risk or contributory negligence or both. It mattered not that he might himself be free from negligence. In that sense, then, he was an absolute insurer of the safety of the appliance.

Sec. 1636–81, Stats. 1911, should be contrasted with the safe-place statute. Sec. 2394–48, Stats. 1911, said that the employer shall furnish a safe place of employment, but another statute went on to define the word "safe" to mean "such freedom from danger to the life, health or safety of employes or frequenters as the nature of the employment will reasonably permit." Sec. 2394–41 (11), Stats. 1911. The court went on to note in the *Olson Case, supra,* at page 610, that under the safe-place statute the duty is measured by such safety as the nature of the employment will reason-

ably permit, but under sec. 1636–81, Stats. 1911, the prohibition against an unsafe appliance was absolute. The conclusion seems clear that while the duty of the employer under sec. 1636–81, Stats. 1911, could accurately be described as that of an insurer, it does not follow that the duty of an employer under the safe-place statute is also that of an insurer. This is but to emphasize the fact that sec. 1636–81 could reasonably be construed as imposing a form of absolute liability (*i.e.,* creating the duty of an insurer as to the employer). On the other hand, sec. 2394–48 contains the concept of reasonableness which is inimical to the imposition of absolute liability.

The other case cited by the appellants in support of their proposition that an employer under the safe-place statute is an insurer is the case of *Van de Zande v. Chicago & N. W. R. Co.* (1919), 168 Wis. 628, 170 N. W. 259. An examination of that case indicates that the court may have been relying on language in the *Kendzewski Case, supra,* which referred to the employer's duty as that of an insurer. In the *Van de Zande Case,* at page 631, the court stated that under the safe-place statute, the master is not an insurer of the safety of the employee, but only such as to the safety of the place or process.

We believe that there is no absolute liability in the sense of liability without fault imposed on the employer by the safe-place statute. It is not helpful or meaningful to describe the employer's duty under the safe-place statute in terms of his being an insurer. The safe-place statute imposes no absolute liability.

To avoid further difficulty in the future, we think it is the better course to withdraw the language in the *Van de Zande Case, supra,* and other cases, in which we have described the duty of the employer under the safe-place statute in terms of his being an insurer. We thus adhere to the numerous cases cited above where we have said that the employer under the safe-place statute is not an insurer.

The second major contention of the appellants is that the employer under the safe-place statute has an "absolute duty," and they cite numerous cases to that effect. There is no dispute on the proposition that this court has on numerous occasions stated (and correctly so) that the duty of the employer under the safe-place statute is "an absolute duty." We believe that the appellants may be laboring under the assumption that the "absolute duty" language in the cases cited by the appellants connotes the idea that the employer has imposed upon him by the statute "absolute liability." This is simply not the correct view of the liability of the employer under the statute.

In *Langos v. Menasha Paper Co.* (1914), 156 Wis. 418, 145 N. W. 1081, the court said that the safe-place statute imposes an absolute duty upon the employer to make the place of employment as free from danger as the nature of the employment will reasonably permit, and in the absence of contributory negligence the liability of the employer follows as a matter of course if this duty is not performed and injury results to the employee because it is not performed.

The duty is to make the place of employment as free from danger as the nature of the employment will "reasonably permit." The concept of reasonableness is still a part of the definition of the duty of the employer under the safe-place statute. However, we reaffirm what we have often said to the effect that the statute imposes a higher duty on the employer than that under the common law. Under the common law, the employer had only the duty of ordinary care, whereas under the safe-place statute he has a duty to make the place of employment as safe as the nature of the employment will reasonably permit. This is clearly a higher standard than ordinary care.

It should be emphasized that while it is a higher standard than ordinary care, the standard of care under the safe-place

statute does not create a duty as to the employer to indemnify anyone hurt on the premises—*i.e.,* absolute liability. We have frequently said that the mere fact that an accident happens does not prove that the place was not safe. *E.g., Heckel v. Standard Gateway Theater* (1938), 229 Wis. 80, 85, 281 N. W. 640.

It is the nature of the place which determines the degree of the duty. *Powless v. Milwaukee County* (1959), 6 Wis. (2d) 78, 81, 94 N. W. (2d) 187. We pointed out in the *Powless Case* that the owner's duty under the statute to provide a safe place for frequenters is an absolute one, but the term "safe" is relative, not absolute, and what is a safe place depends on the facts and conditions of each place. The point is simply that the statute recognizes a "rule of reason." *Olson v. Whitney Bros. Co.* (1915), 160 Wis. 606, 610, 150 N. W. 959. We said in the *Olson Case, supra,* at page 610, that the statute does not impose upon an employer an impossibility or an unreasonable burden.

Normally the question of whether the safe-place statute is complied with or violated is a question for the trier of fact. *Zehren v. F. W. Woolworth Co.* (1960), 11 Wis. (2d) 539, 544, 105 N. W. (2d) 563. Here the jury found that the defendants complied with the statute, and there is no basis to disturb that finding.

Motion for rehearing denied, without costs.