**Donald G. HOPKINS, Harriet Hopkins, and National Union Fire Insurance Company of Pittsburg, a foreign insurance company, Plaintiffs,**

v.

**ROS STORES, INC., a foreign corporation, and Westchester Fire Insurance Company, a foreign insurance company, Defendants.**

No. 89–C–1039–C.

United States District Court,
W.D. Wisconsin.

Oct. 5, 1990.

Lee R. Atterbury, Madison, Wis., for plaintiffs.

William J. Katt, Kasdorf, Lewis & Swietlik, S.C., Milwaukee, Wis., for defendants.

## ORDER

CRABB, Chief Judge.

In a thorough and comprehensive report and recommendation entered herein on September 8, 1990, the United States Magistrate recommended dismissal of plaintiffs' claim that defendant Ros failed to provide plaintiff Donald Hopkins with a safe place of employment as required by Wis.Stat. § 101.11(1). The magistrate also recommended denial of defendants' alternative motion for summary judgment. Plaintiff has objected to the recommendation that the safe place claim be dismissed.

The magistrate's legal reasoning is persuasive. I find nothing in plaintiffs' objections or in the briefs filed in opposition to defendants' motion to dismiss that convinces me that the Wisconsin courts would recognize a safe place claim in the facts alleged in plaintiffs' complaint. Therefore,

I will grant the motion to dismiss, without reaching defendants' alternative motion for summary judgment.

## ORDER

IT IS ORDERED that the findings of fact and conclusions of law proposed by the United States Magistrate in his report and recommendation of September 8, 1990 are ADOPTED as the court's own.

FURTHER, IT IS ORDERED that defendants' motion to dismiss is GRANTED as to plaintiffs' second cause of action that defendant Ros failed to provide plaintiff Donald G. Hopkins with a safe place of employment as required by Wis.Stat. § 101.11(1).

## REPORT AND RECOMMENDATION

JAMES GROH, United States Magistrate.

Plaintiff Donald G. Hopkins (Hopkins), an employee of Ruan Leasing Company, brings this diversity action against defendants for damages he sustained as a result of a motor vehicle accident which occurred while he was driving a truck owned by defendant ROS Stores, Inc. (ROS).[1] Plaintiff's principal claim is that defendant ROS was negligent in failing to properly inspect and maintain the truck. His second cause of action, the one at issue on this motion, is that ROS failed to provide him with a safe place of employment as required by Wis. Stat. § 101.11(1). Defendants have filed a motion to dismiss the latter count for failure to state a claim for which relief may be granted, and have moved in the alternative for summary judgment.

As I have concluded that it would be inappropriate for the federal court to endorse the novel and expansive interpretation of the Wisconsin safe-place statute, Wis.Stat. § 101.11(1), advanced by plaintiff (see *Afram Export Corp. v. Metallurgiki Halyps*, S.A., 772 F.2d 1358 (7th Cir.1985), I will recommend that defendants' motion to dismiss be granted.[2]

I. *Applicability of Wis.Stat. § 101.11(1) to Motor Vehicles*

### Findings of Fact [3]

For the purpose of defendants' motion to dismiss, I find the following from the well-pleaded factual allegations of the amended complaint (Dkt. # 11):

1. Plaintiffs Donald and Harriet Hopkins are citizens of the State of Wisconsin. (Amended Compl. ¶¶ 1, 3, 4)

2. National Union Fire Insurance Company of Pittsburg is an insurance company with its principal place of business in the State of New York. (*Id.* ¶¶ 1, 5)[4]

3. Defendant ROS is a Delaware corporation. (*Id.* ¶ 1)[5]

4. Defendant Westchester Fire Insurance Company (Westchester) is an insurance company with its principal place of business in the State of New Jersey. (*Id.* ¶¶ 1, 7)[6]

5. On December 17, 1986, Hopkins, an employee of Ruan Leasing Company, was involved in a traffic accident while driving a 1981 Ford truck owned by ROS. (*Id.* ¶ 8)

---

1. Plaintiff Harriet Hopkins seeks to recover damages for loss of consortium, and National Union Insurance Company of Pittsburgh joins the action to secure its subrogation interests as the workers compensation carrier. For ease of reference the text refers only to plaintiff Donald Hopkins.

2. This determination, if accepted by the district court, renders moot defendants' alternative motion for summary judgment. I have nevertheless considered that motion in Part II, and concluded that defendants have failed to establish the absence of material factual issues regarding the control of the vehicle and its condition at the time plaintiff took possession of it.

3. Additional findings pertaining to the summary judgment motion may be found at pp. 385–86, *infra.*

4. I note that National Union Fire Insurance Company of Pittsburg was incorporated in Pennsylvania, Best's Insurance Reports, Property-Casualty 203 (88th ed. 1988).

5. The pleadings do not reveal the location of ROS' principal place of business. It is in Minnesota according to the Million Dollar Directory, America's Leading Public and Private Companies 3560 (1990).

6. Westchester is incorporated in New York. Best Insurance Reports, Property-Casualty at 778 (88th ed. 1988).

6. The brakes of the truck failed when Hopkins was attempting to slow for traffic, causing him to lose control of the truck and collide with another vehicle and a power line pole. (*Id.* ¶ 8)

7. ROS failed to properly inspect the truck so as to discover a defective brake system. (*Id.* ¶ 9)

8. ROS failed to provide proper maintenance to the truck and correct a defective brake system. (*Id.* ¶ 9)

9. ROS failed to warn Hopkins concerning the dangers of operating a truck with a defective brake system. (*Id.* ¶ 9)

10. As a result of the accident, Hopkins sustained damages in the amount of $250,-000. (*Id.* ¶ 11)

### Conclusions of Law [7]

Defendants move for dismissal of plaintiff's second cause of action, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted. In that claim plaintiff alleges that ROS breached the duty imposed upon it by the safe-place statute (Wis.Stat. § 101.11(1)) to provide him with a safe place of employment. Wisconsin's safe-place statute, Wis. Stat. § 101.11(1), provides:

Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or

public building as to render the same safe.

A place of employment is defined, in pertinent part, as follows:

every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit, but does not include any place where persons are employed in private domestic service which does not involve the use of mechanical power or in farming.

Wis.Stat. § 101.01(2)(f). More specifically, plaintiff contends that ROS failed to maintain the truck's brakes in good repair.[8] Defendants contend that the safe-place statute does not apply to motor vehicles.

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, a court must accept as true the well-pleaded factual allegations contained in the complaint and view them, together with all reasonable inferences which may be drawn from them, in the light most favorable to the plaintiff. *Sladek v. Bell System Management Pension Plan,* 880 F.2d 972, 975 (7th Cir.1989); *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985). A dismissal should be granted only if the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Ellsworth,* 774 F.2d at 184.

It is axiomatic that in diversity cases the federal court is bound to apply the applicable state law in conformity with the decisions of the highest state court. On the other hand, "[i]t has limited discretion to adopt untested legal theories brought under the rubric of state law." *Affiliated FM Ins. Co. v. Trane Co.,* 831 F.2d 153, 155 (7th Cir.1987); see *A.W. Huss Co. v. Conti-*

---

7. Jurisdiction exists pursuant to 28 U.S.C. § 1332(a).

8. The statute imposes essentially co-extensive obligations upon the employer and upon the owner of the place of employment.

*nental Casualty Co.*, 735 F.2d 246, 253 (7th Cir.1984). This is the concern presented by defendants' motion. Plaintiff's attempt to extend the application of the safe-place statute to motor vehicles introduces an entirely new and novel theory of liability. In its entire history of nearly 80 years, this interpretation of the statute has never been presented to either the Wisconsin Supreme Court or the Court of Appeals for decision.[9] Thus, this court is left completely without guidance as to the direction the Wisconsin courts would likely take on the issue.

Other courts, when confronted with similar dilemmas, have declined to initiate bold changes in state law, but rather have deferred to the informed judgment and discretion of the state courts and legislatures. For example, in *Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329, 1333 (7th Cir. 1985), the Court of Appeals refused to extend Wisconsin tort law to permit recovery for economic loss sustained solely as a result of damage to a defective product without accompanying damage to person or property. *Id.* at 1333. There, as here, no Wisconsin court had considered the issue. Because of uncertainty whether Wisconsin courts would permit such recovery, and the substantial policy concerns involved, the court declined to expand the state law to permit such claims. *Id.*

To like effect is *Affiliated FM Insurance Co.*, 831 F.2d at 155, in which the court refused to expand the scope of Wisconsin products liability law and noted the limitations on a federal court's authority to determine state law and policy.

In *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 441 (7th Cir.1977) we refused to adopt, for the State of Wisconsin, California's 'products line' doctrine as a means for holding a successor corporation strictly liable for its predecessor's defective products. There, we said that '[a]bsent compelling necessity, therefore, a Federal Court should not impose the policy pronouncements of the Supreme Court of one state upon the citizens of another. Nor are we at liberty to impose our own view as to what the law of Wisconsin should be. As the Wisconsin Supreme Court has recognized, such broad public policy issues are best handled by legislatures with their comprehensive machinery for public input and debate.' *Id.*

Similar considerations are present in this case. Without guidance from the Wisconsin courts, this court is left to navigate in uncharted waters. Absent some authoritative signal from the Wisconsin courts or the legislature, no justification exists for this court to extend the reach of the safe-place statute in such a profound and unprecedented way.[10] Whatever the merits or demerits of extending the safe-place statute, the decision is more in keeping with the legislative process than with fettered discretion of a federal court sitting in diversity. *Cf. Miskunas v. Union Carbide Corp.*, 399 F.2d 847, 851 (7th Cir.1968), *cert. denied*, 393 U.S. 1066, 89 S.Ct. 718, 21

**9.** In support of his argument that the safe-place statute is applicable to motor vehicles, Hopkins cites as authority *L.G. Arnold, Inc. v. Industrial Comm'n*, 267 Wis. 521, 525–26, 66 N.W.2d 176, 178 (1954), and *Van de Zande v. Chicago & N.W. R.R.*, 168 Wis. 628, 633, 170 N.W. 259, 260, appeal dismissed, 252 U.S. 574, 40 S.Ct. 395, 64 L.Ed. 723 (1919). These cases are inapposite. *Arnold* involved the attempted application of the statute to the negligent operation of a crane which was mounted on a truck. The Supreme Court held that the statute did not apply to "acts of operation" and denied liability. It was not called upon to, and did not, consider the application of the statute to motor vehicles. Similarly, the *Van de Zande* decision fails to provide ammunition for plaintiff's argument. In *Van de Zande*, the plaintiff was injured when he jumped to the ground from a boxcar from which he had been unloading ties. 168 Wis. at 629, 170 N.W. at 259. Again, the Wisconsin Supreme Court made no mention of the safe-place statute being applicable to means of transportation, let alone motor vehicles. Furthermore, the implication in *Van de Zande* that an employer under the safe-place statute is an insurer, was specifically withdrawn in *Zernia v. Capitol Court Corp.*, 21 Wis.2d 164, 170a, 125 N.W.2d 705, 707 (1964).

**10.** I have reviewed the case law and other legal authorities put forward by the parties in support of their respective positions, and find none of these authorities to be of particular value in determining the issue here.

L.Ed.2d 709 (1969) (whether to accord wife a consortium cause of action under Indiana law was issue for Indiana legislature or judiciary to decide).

The Seventh Circuit Court of Appeals has also indicated, with some force, that parties who wish to press innovative interpretations of state law should litigate those claims in state court rather than federal court. See *Afram Export Corp. v. Metallurgiki Halyps*, S.A., 772 F.2d 1358, 1371 (7th Cir.1985); *Shaw v. Republic Drill Corp.*, 810 F.2d 149, 150 (7th Cir.1987). In *Afram Export Corp.*, the plaintiff had sought damages in a breach of contract action for opportunity costs incurred because of defendant's breach of contract. 772 F.2d at 1370. In declining to sustain this expansive claim, the court observed that:

> A party who wants a court to adopt an innovative rule of state law should litigate in state rather than federal court (if it can; it cannot if the defendant removes the case to federal court). Federal judges are disinclined to make bold departures in areas of law that we have no responsibility for developing. A resident of Wisconsin, Afram could not be concerned with encountering prejudice in the Wisconsin state courts against a nonresident; that was something for Metallurgiki to worry about. There is a serious question whether as an original matter a resident ought ever be allowed to invoke the diversity jurisdiction, whose only modern *raison d'etre* is to protect nonresidents against bias in favor of residents. But certainly when a resident does invoke the diversity jurisdiction, and perhaps in any case, he cannot expect to receive a very sympathetic hearing for his argument that the federal court

should adopt an innovative interpretation of state law.

*Id.* at 1371.

Similarly, in *Shaw*, 810 F.2d at 150, the plaintiff asked the federal court to recognize a new exception to the general rule that a corporation which purchases the assets of another corporation does not also assume its liabilities. In declining to create such an exception, the Court of Appeals reiterated its "unwillingness to speculate on any trends in state law." *Id.* The court went on to point out that:

> This policy applies with special force to a plaintiff in a diversity case who has chosen to litigate his state law claim in federal court. *We write only to emphasize that our policy will continue to be one that requires plaintiffs desirous of succeeding on novel state law claims to present those claims initially in state court.*

*Id.* [emphasis added].

As in *Afram* and *Shaw*, the plaintiff here is a Wisconsin resident who has chosen to litigate his unique state law theories in federal court rather than state court and no reason appears why his claim is any more deserving of a sympathetic hearing than those of the plaintiffs in those cases. Considering the complete lack of direction from the Wisconsin courts on the issue, this case is an appropriate one for the application of the policy affirmed in *Shaw*. I will therefore recommend that defendants' motion to dismiss be granted on that ground.

As a further ground for decision, I am also of the view that the Wisconsin courts would reject the construction of the safe-place statute that plaintiff proposes.

The history and language of the statute strongly suggests that it was neither designed nor intended to apply to motor vehicles. Adopted in 1911,[11] it was amended in 1913[12] and survives today in virtually

---

11. 1911 Wis.Laws Ch. 485, § 1 provides:

Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reason-

ably adequate to render such employment and place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employes and frequenters.

12. 1913 Wis.Laws Ch. 588, § 3 states:

Every employer shall furnish employment which shall be safe for the employes therein

the identical form. It is of particular significance that the statute antedates the widespread use of motor vehicles in Wisconsin.[13] It is of equal significance that while the use of motor vehicles (and their related statutory regulation) [14] greatly increased over the past eight decades, no mention of motor vehicles or other modes of transportation has been introduced into the statute or its related provisions.

Furthermore, it can hardly go unnoticed that the safe-place statute and related provisions speak in terms more commonly associated with real property than personal property. Indeed, the 1913 version of the statute which added "owners" and public buildings to its coverage, also included the architects who prepared the construction plans for places of employment. The statute still makes reference to "construction" of places of employment, and the definition of owner contained in Wis.Stat.

§ 101.01(2)(e) [15] specifically includes "all architects and builders." [16]

Plaintiff invokes the provisions of the statute as a "frequenter" of the vehicle of which ROS is the "owner." The term "frequenter" is defined, in effect, as one who is not a trespasser,[17] a term conventionally associated with real property.[18] In any event neither frequenter nor trespasser are terms normally associated with the use or operation of a motor vehicle.

Finally, it is necessary to consider the potential impact of the proposed extension of the safe-place statute upon the existing body of Wisconsin law pertaining to motor vehicles, virtually all of which has developed since the adoption of the safe-place statute. The various provisions concerning motor vehicles found in the Wisconsin Statutes alone number over 150 pages. It is obvious that this body of law and regulation would have to be reconciled with the proposed change in the safe-place stat-

and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. *Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe.* (emphasis original) With the exception of the reference to architects, the 1913 version of the safe-place statute is the same as the current Wis.Stat. § 101.11(1).

13. Wisconsin had less than 30,000 registered motor vehicles in 1912. 39A Wis.Stat.Ann. Introduction, p. VII (West 1981) (from the Final Report of the Wisconsin Legislative Council, January 1957, on the proposed Vehicle Code).

14. *Id.* at VII–IX, XII–XIII; Wis.Stats. Chs. 340–351 (1987–88).

15. The term "owner" is defined in Wis.Stat. § 101.01(2)(e) to include:
every person, firm, corporation, state, county, town, city, village, school district, sewer district, drainage district and other public or quasi-public corporations as well as any manager, representative, officer, or other person having ownership, control or custody of any

place of employment or public building, or of the construction, repair or maintenance of any place of employment or public building, or who prepares plans for the construction of any place of employment or public building. Said ss. 101.01 to 101.25 shall apply, so far as consistent, to all architects and builders.

16. See also Wis.Stat. § 101.025 (regulates ventilation requirements for places of employment and public buildings); Wis.Stat. § 101.12(1) (provides for the submission and approval of plans for public buildings and places of employment prior to the commencement of construction).

17. The term "frequenter" is defined in Wis.Stat. § 101.01(2)(e) to be:
every person, other than an employe, who may go in or be in a place of employment or public building under circumstances which render such person other than a trespasser. Such term includes a pupil or student when enrolled in or receiving instruction at an educational institution.

18. A trespasser has been generally defined to be "a person who enters or remains upon land in the possession of another without the privilege to do so created by the possessor's consent or otherwise." *Harder v. Maloney,* 250 Wis. 233, 238, 26 N.W.2d 830, 832 (1947). But see *Hartman v. Badger Tobacco Co.,* 210 Wis. 519, 520, 246 N.W. 577, 578 (1933) (passenger in motor vehicle was trespasser as to owner of motor vehicle where driver was without authority to offer ride).

ute—a task more appropriate to the legislative function than the judicial.

Extension of the safe place statute may have further ramifications. Once parted from its real property moorings, the ultimate reach of the statute is difficult to predict, as is its impact upon businesses generally, insurance companies and other forms of transportation which might also be viewed as "places of employment." Such far-reaching policy implications are best left to the considered judgment of the Wisconsin legislature with its comprehensive ability for public input and debate.[19]

For these reasons, I also conclude that the district court should decline, on the merits, to extend the application of the safe-place statute to include motor vehicles.

## II. *Defendants' Motion for Summary Judgment—Absence of Control*

Defendant contends, in the alternative, that liability under the safe-place statute cannot be imposed upon ROS as the owner of a place of employment in any event, because it did not have control of the vehicle at the time of the accident. Though it is unnecessary to take up this question, given the determination above that the statute does not apply to motor vehicles, I will nevertheless do so in order that all questions pertaining to the statute may be resolved.

### *Additional Findings of Fact—Summary Judgment*

For purposes of the summary judgment motion only, I find the following facts:[20]

1. Hopkins commenced employment with Ruan Leasing Co. (Ruan) in 1983 as a "shuttle" driver and was so employed at the time of the traffic accident on December 17, 1986. (Pl. Finding ¶¶ 2, 6; Def.Rep. ¶¶ 2, 6)

2. Hopkins' position as a shuttle driver required him to deliver semi-tractors (trucks) or tractors with trailers from one location to another as directed by Ruan. (Pl.Finding ¶ 3; Def.Rep. ¶ 3; Hopkins Dep. pp. 13, 27)

3. Hopkins was paid by the hour; when he was not shuttling trucks he was not working. (Pl.Finding ¶ 5; Def.Rep. ¶ 5)

4. On Tuesday, December 16, 1986, Hopkins delivered one truck from McFarland, Wisconsin, to Green Bay, Wisconsin, and then another from Green Bay to a Ruan terminal near Hopkins, Minnesota. (Hopkins Dep. pp. 24, 18) Hopkins then received orders to pick up a 1981 Ford truck from the ROS terminal in Hopkins, Minnesota, and deliver it to Green Bay, Wisconsin. (Hopkins Dep. pp. 28–29) Hopkins then drove the truck to a local motel without experiencing any brake problems with the vehicle. (Def. Finding ¶ 6; Pl. Rep. ¶ 6; Hopkins Dep. pp. 32–33, 41)

5. The following morning, December 17, 1986, Hopkins began the trip from Hopkins, Minnesota, to Green Bay at 5:30 a.m. (Def. Finding ¶¶ 2, 5; Pl.Rep. ¶¶ 2, 6)

6. Before leaving, Hopkins checked the air pressure on the brakes of the truck, and found it satisfactory. Up to the time of the accident he experienced no difficulty with the brakes and did not notice any reduction

---

**19.** Indeed, that is the very course recommended by the Wisconsin Supreme Court in *Fish v. Amsted Industries, Inc.,* 126 Wis.2d 293, 310, 376 N.W.2d 820, 829 (1985). There the court itself declined to expand the state products liability law, observing that because of the broad public policy issues involved in such a decision, it was best left to be determined through the legislative process.

**20.** The findings are derived principally from the following sources:
  1) Plaintiff's Amended Complaint, Dkt. # 11 (hereafter, Compl.).
  2) Defendants' Answer to Amended Complaint, Dkt. # 13 (Ans.).

3) Plaintiff's Proposed Findings, Dkt. # 28 (Pl. Finding).
4) Defendants' Proposed Findings, Dkt. # 17 (Def.Finding).
5) Plaintiff's Reply to Defendants' Proposed Findings, Dkt. # 28 (Pl.Rep.).
6) Defendants' Reply to Plaintiff's Proposed Findings, Dkt. # 35 (Def.Rep.).
The parties have also submitted portions of the transcript of the deposition of plaintiff Donald Hopkins under the affidavits of Lee Atterbury (pp. 13, 20, 22, 24 and 28) (Dkt. # 27) and William Katt (pp. 25–29, 32–34 and 41–43) (Dkt. # 20).

in air pressure. (Def. Finding ¶ 4; Pl. Rep. ¶ 4; Hopkins Dep. p. 43)

7. At approximately 10:00 a.m. on December 17, 1986, when attempting to slow for traffic, Hopkins lost control of the truck and collided with another vehicle and a power line. (Def. Finding ¶ 1; Compl. ¶ 8; Hopkins Dep. p. 43)

8. At the time of the accident, Hopkins was operating the truck in the course of his employment with Ruan. (Pl. Finding ¶ 6; Def. Rep. ¶ 6)

### Material Unresolved Facts

1. Whether the accident vehicle was owned by ROS or leased from Ruan.

2. The identity of the person or entity responsible for the maintenance of the brakes on the vehicle.

3. The identity of the person or entity who in fact performed the maintenance on the brakes on the vehicle prior to the accident.

4. The condition of the brakes on the vehicle at the time ROS released the truck to Hopkins on December 16, 1986.

### Conclusions of Law

It is undisputed that Donald Hopkins was an employee of Ruan Leasing Co. and was acting solely in that capacity at the time of the accident. Thus, plaintiff's theory of liability under the safe-place statute is *not* predicated upon any failure of an employer to provide safe employment or a safe place of employment. Rather, Hopkins contends that ROS was the owner of his place of employment (the truck) and was therefore liable to him as a "frequenter." See Wis.Stat. §§ 101.11(1) and 101.-01(2)(d).

Defendants' narrow claim on this motion is that they can have no liability under the statute because the vehicle was in the exclusive control and custody of plaintiff (on behalf of Ruan) at the time of the accident. In response, plaintiff urges that the question of control cannot be determined on this record, and that he has not had the opportunity, in the exercise of diligence, to develop the record in important respects.

The general rules governing summary judgment under Fed.R.Civ.P. 56(c) are well established. Summary judgment may be rendered:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted....

More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such, that a reasonable jury could return a verdict for the nonmoving party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The movant bears the initial burden of informing the court of the basis of motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986). The nonmoving party receives the benefit of all reasonable inferences, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Friedel v. City of Madison,* 832 F.2d 965, 972 (7th Cir.1987), and may withstand the motion merely by producing circumstantial evidence which would reasonably allow a trier of fact to draw an inference in his/her favor. *Parker v. Federal Nat. Mortg. Ass'n,* 741 F.2d 975, 980 (7th Cir.1984).

It is undisputed that at the time of the accident in issue the sole and exclusive possession of the truck had been transferred to Ruan and its employee, Hopkins. From this, defendants seek to invoke what appears to be the general rule that "[a]

safe-place duty is imposed upon an owner only when there is retention of a right of control beyond mere ownership or right of inspection." *Kaltenbrun v. City of Port Washington,* 156 Wis.2d 634, 457 N.W.2d 527, 531 (App.1990). The mere recitation of the rule, however, does not determine its application in all circumstances, and defendants have made scant effort to justify its application in this instance. The rule itself was developed in the quite-different context of disputes over control of fixed worksites. See, *e.g., id.* at 528 (construction site). Given the ease and multiplicity of circumstances in which physical possession of a vehicle may be transferred from one to another, it is obvious that other considerations must necessarily enter into the determination whether control has been relinquished for purposes of the statute; to suggest a few, the purpose and duration of the entrustment, the relationship of the parties, and the terms and conditions under which the entrustment is made.

As to the latter point, it appears to be settled under existing Wisconsin law, that a court may look to the terms of an agreement in deciding whether or not custody or control of a workplace exists. *Hortman v. Becker Const. Co., Inc.,* 92 Wis.2d 210, 221, 284 N.W.2d 621, 626 (1979). It is fair, I think, to assume that some sort of understanding must have governed Ruan's delivery of the truck to Green Bay for ROS, since private, for-profit companies rarely confer gratuitous benefits on other such companies. The burden of production, of course, is on the moving party, and ROS is also in the best position to have that information.

Such an agreement has not been identified, but no fault can be ascribed to plaintiff. He has been diligent in his efforts to obtain that and other relevant information from defendants. Hopkins served his first set of interrogatories addressing these concerns on April 27, 1990, but answers were not provided until after he had filed his response to the summary judgment motion on July 2, 1990. (Def. Ans. to 1st set of Interrogatories, Dkt. # 30) Moreover, those answers are less than illuminating. For example, ROS stated under oath that it did not know whether it or Ruan was the owner of the vehicle (Dkt. # 30, Int. # 10), but its further answers variously assert or imply that it had no responsibility for the maintenance of the vehicle and that Ruan had the sole maintenance responsibility. (Dkt. # 30, Int. ## 4, 6, 7, 8, 9, 12, 13) [21] The basis for those assertions is not stated. Two agreements (one with an illegible date) pertaining to truck leasing and maintenance are attached to the answers to interrogatories (Dkt. # 30, Exs. 2 and 3), but defendants have made no effort to address whether, or to what extent, they bear upon the issue of control and plaintiff has had no opportunity to do so. I have not undertaken an independent inquiry.[22]

Defendants' answers to plaintiff's interrogatories also bear upon an important corollary to the general rule cited above—that in order for an owner of a place of employment to avoid imposition of liability under the safe-place statute, it must also appear that the place of employment was in a safe condition at the time control was relinquished. *Potter v. City of Kenosha,* 268 Wis. 361, 372, 68 N.W.2d 4, 10 (1955). Defendants' only showing in this regard is Hopkins' testimony that he checked the air pressure on his brakes before starting out and experienced no apparent brake deficiencies prior to the accident. Given plaintiff's efforts to obtain the relevant maintenance standards, records and other evidence bearing on this issue, it is obvious

---

**21.** ROS also disclaimed having records or information regarding the prior inspection, condition or maintenance of the brakes on the vehicle. (Dkt. # 29, Int. ## 1, 2, 3)

**22.** The burden, of course, is upon the parties, not the court, to lay the factual or legal basis for the support or opposition, to the motion.
　　E. The court does not consider it is under any obligation to search the record for factual matters that might support either the grant or the denial of the motion. It is the duty of the parties to bring to the court's attention by specific reference to the record as outlined in paragraphs I.B, III.B., and IV.B., all factual and legal matters material to the resolution of the issues in dispute.
Procedures to be Followed on Motions for Summary Judgment, p. 4.

that the safe mechanical condition of the brakes at the time Hopkins picked up the vehicle cannot be determined as a matter of law on the present record.

For the foregoing reasons, I conclude that genuine issues of material fact exist as to the issues of control and condition of the vehicle, and will recommend that defendants' alternative motion for summary judgment be denied.

## RECOMMENDATION

IT IS RESPECTFULLY RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B), that defendants' motion to dismiss be GRANTED and that their alternative motion for summary judgment be DENIED.